INSLEY v. GARSIDE et al.

(Circuit Court of Appeals, Ninth Circuit. March 9, 1903.)

No. 829.

1. BANKRUPTCY—CLAIM OF SURETY—PURPOSE TO CONTEST LIABILITY—EFFECT.
   The contingent claim of the surety of a bankrupt principal, who, in his petition for allowance of his claim, expressly limits his admission of his liability as surety to the bankruptcy proceedings, thereby indicating an intention to contest his obligation, is improperly allowed.

2. SAME—PROVABILITY OF CLAIM.
   Under Bankr. Act 1898, § 571 (Act July 1, 1898, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), providing that, whenever a creditor whose claim is secured by the individual undertaking of any person fails to prove his claim, the surety may do so in the creditor's name, and, if he discharge such undertaking, shall be pro tanto subrogated to the creditor's rights, the contingent claim of a surety of a bankrupt principal is not provable; it being the creditor's claim only that is provable.

Appeal from the District Court of the United States for the District of Alaska, Division No. 1.

J. F. Malony and Malony & Cobb, for appellant.
Winn & Shackelford (Charles B. Marks, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This is an appeal by the trustee of the estate of one I. J. Sharick, a bankrupt, from a judgment allowing a claim against the bankrupt estate in favor of the appellees, George W. Garside and William Winn, and decreeing its priority over all other claims against the estate. The claim of Garside and Winn arises out of these facts: Sharick, who was carrying on the jewelry business at Juneau, Alaska, in the name of the Alaska Jewelry Company, obtained in the court below a decree of divorce against his wife, Caroline Sharick. Thereafter Mrs. Sharick filed therein a petition praying that the decree be modified or annulled, and that she be awarded, and decreed to have alimony of and from said I. J. Sharick. Mrs. Sharick also commenced an action in the same court against I. J. Sharick and the Alaska Jewelry Company for a division of the stock of jewelry, which she alleged to be community property of herself and I. J. Sharick. In the latter action, the court having appointed a receiver of the jewelry, it was ordered by the court that:

"Upon the defendants, I. J. Sharick and the Alaska Jewelry Company, executing a good and sufficient bond herein in the sum of $2,000, conditioned that the said I. J. Sharick shall pay off and discharge any decree that may be rendered against him in this cause, or in the cause of I. J. Sharick against Caroline Sharick, or that the said Alaska Jewelry Company and I. J. Sharick shall have the said property now in the hands of a receiver forthcoming to abide any decree that may be rendered in either of the above-mentioned proceedings in favor of the said Caroline Sharick, affecting the said property, then that the temporary receiver herein return all the property in his hands and be discharged."

Thereupon a bond was given by I. J. Sharick and the Alaska Jewelry Company, as principals, with George W. Garside and William Winn as sureties, to Caroline Sharick, in the sum of $2,000, conditioned that:

"Whereas, the said Caroline Sharick has filed her petition in the case of I. J. Sharick vs. Caroline Sharick, to have a certain decree of divorce in said cause rendered in the United States District Court for Alaska, October 3d, 1899, set aside or modified, and has also filed the above-entitled cause as ancillary thereto, and has procured the honorable District Court of the United States for Alaska to appoint a temporary receiver for the stock of jewelry now in the store of the Alaska Jewelry Company on Seward street, Juneau, Alaska, inventorying $3,154.30; and whereas, the said court has directed the temporary receiver to return said property to the said Alaska Jewelry Company and I. J. Sharick, upon their executing a bond in the sum of $2,000: Now, if the said I. J. Sharick shall pay off and discharge any decree that may be entered against him in favor of Caroline Sharick in the above-mentioned proceedings, or if the said Alaska Jewelry Company and I. J. Sharick shall have said property forthcoming, to abide any decree that may be rendered by said court in the above-mentioned proceedings in favor of the said Caroline Sharick affecting said property, then this obligation shall be null and void; otherwise to remain in full force and effect."

Upon the execution of the bond the court ordered—

"That Emery Valentine, the temporary receiver herein, be, and he is hereby, directed and required to turn over and deliver to the defendants I. J. Sharick and the Alaska Jewelry Company all the property now in his hands as temporary receiver herein, and that thereupon he be discharged from further duties as temporary receiver herein."

For security against liability on that bond, Sharick and the Alaska Jewelry Company at the same time executed to Garside and Winn a chattel mortgage purporting to cover the stock of jewelry, which had been inventoried and found by the court to be of the value of $3,154.30, which chattel mortgage contained the following:

"The purpose of this conveyance is such that, whereas, the said G. W. Garside and Wm. Winn have signed for us a bond as sureties thereon, the sum of $2,000 in a certain cause pending in the United States District Court for Alaska, wherein Caroline Sharick is plaintiff and I. J. Sharick and the Alaska Jewelry Company are defendants,

"Now, if the said bond and the obligations thereunder incurred shall be discharged by order of the court, then this conveyance shall be null and void, otherwise to remain in full force and effect.

"It is further understood and agreed that the grantors herein shall remain in possession and full control of said stock, and shall have the right to sell the same in ordinary course of trade, but the money realized on all such sales shall be deposited with S. Blum at the close of each day, and shall not be paid out by the said S. Blum prior to the discharge of said bond, except to pay for articles bought to replace articles sold from said stock or to replenish the same, and all articles so bought and entered in said store to replace said stock are hereby embraced in and covered by this mortgage to all intents and purposes the same as if they now constituted a part of said stock. The said S. Blum is also authorized to pay the necessary running expenses of said store.

"It is further agreed and understood that if the grantors herein shall fail to turn over the said money and comply with all the conditions herein contained, the said grantees are hereby authorized and empowered to take possession of said store building and the stock therein contained, and retain possession of the same during the life of this mortgage."

The action of Mrs. Sharick against I. J. Sharick and the Alaska Jewelry Company, and her petition in the divorce suit, were consolidated and tried together by the court below, which found, among other things, that the decree of divorce was obtained by I. J. Sharick through fraud, and without notice to his wife; that while they were man and

wife they accumulated by their joint efforts a large amount of property; that in 1896 they were living, with their children, in Tacoma, Wash., where Sharick was conducting a jewelry business, and was the owner of a stock of merchandise of the value of $15,000; that in the month of January of that year he deserted his wife and children, and, without notice to her or to his creditors, left Tacoma for South America, taking with him the most valuable part of his stock, and finally located at Juneau, Alaska, taking there with him money and property of $3,000 or more in value.

The tenth, eleventh, twelfth, and thirteenth findings made by the court in the consolidated case referred to are as follows:

"Tenth. Whether the $3,000 admitted by I. J. Sharick to have been brought by him to Juneau was the result of his earnings, or was the proceeds of the community property taken by him from the stock of goods at Tacoma, the court is unable to determine with certainty. Mr. I. J. Sharick has been so impeached by other testimony in the case that the court cannot give credit to his statement that said $3,000 was earned by him after leaving Tacoma. The only inference the court can draw is that it was a part of the community property, or the avails thereof, taken by him from Tacoma at the time he deserted his wife and family.

"Eleventh. That Caroline Sharick, the plaintiff, did not desert said I. J. Sharick, and in no wise violated her marriage obligations toward I. J. Sharick.

"Twelfth. That I. J. Sharick did desert Caroline Sharick and her children.

"Thirteenth. That I. J. Sharick is now indebted to divers and sundry persons in the sum of $1,000; that he has property of the value of about $2,000 over and above his indebtedness."

Based upon these findings, the court below decreed—

"That the former decree of divorce be, and is, modified in the matter of alimony only, and that the said Caroline Sharick do have and recover of I. J. Sharick, as alimony, the sum of $800, and the said I. J. Sharick is hereby required to pay the same to said Caroline Sharick forthwith; and there is hereby set aside to said Caroline Sharick, out of the stock of goods heretofore involved in this case, goods to the amount in value of the said sum of $800, as her separate property, and as in satisfaction of the alimony hereby adjudged to her; and it is further ordered that, in case the said I. J. Sharick shall fail to pay said sum of money as hereinbefore directed, that Emery Valentine be, and he is hereby, appointed receiver in this action to take charge of the said goods, jewelry, and merchandise, upon giving a good and sufficient bond in the sum of $3,000, conditioned for the faithful discharge of his duties as receiver in this behalf, and that he set aside a certain portion of the said goods at the invoice price to this plaintiff, to the amount and value of $800; that he shall cause to be sold at public vendue so much of the remaining goods and merchandise, to the highest and best bidder for cash, as will be sufficient to pay the cost and expense of this suit and the sums of money heretofore ordered to be paid as alimony pendente lite, and cost and disbursements so ordered paid, and as yet remaining unpaid; that upon the delivery of said goods by the said I. J. Sharick to the said receiver, and all thereof, except such as has been sold in a due course of business and can be duly accounted for by the said I. J. Sharick, the bond heretofore given by the said Sharick, conditioned for the payment of any sum of money that might be adjudged against him, the said Sharick, in this behalf, and have the property heretofore invoiced forthcoming to abide the result of any decree that might be rendered in these proceedings, is hereby set aside and discharged, and the sureties discharged from the obligation thereof as to any default that may hereafter be made by said Sharick in that behalf."

On the 28th day of March, 1901, certain creditors of I. J. Sharick filed their petition in bankruptcy against him, which resulted in the

seizure of the stock of jewelry by the marshal under the order of the bankruptcy court; in the subsequent adjudging of Sharick a bankrupt; in the appointment of C. D. Rogers as referee in bankruptcy, the presentation to him by the appellees, Garside and Winn, of their claim against the bankrupt's estate, based upon the aforesaid bond and chattel mortgage, and the decree of the court below, from which the present appeal is taken, allowing that as a preferred claim to the extent of $584, and directing its payment out of the funds of the estate in the registry of the court. It is not pretended that the appellees have ever paid anything on the bond executed by them; and, in their petition for the payment of their claim out of the estate of the bankrupt in preference to all other claims, there is, so far from any unqualified admission of any liability on their part, a strong inference of a denial of any such liability. Yet the judgment appealed from gives them $584 of the funds of the estate of the bankrupt, in preference to all other claims against it, leaving them at liberty to make the contest indicated by subdivision 14 of their petition, which is as follows:

"That your petitioners are advised, and being so advised, for the purpose of these proceedings only, and not by way of confession to said Caroline Sharick, allege that they are liable upon said bond for the sum of $1,025.65, with interest thereon at the rate of eight per cent. per annum from the 27th day of March, 1901, to the said Caroline Sharick."

But over and above this is the fact that, conceding that Mrs. Sharick's demand against the bankrupt, as established by the judgment against him, is provable in bankruptcy, it is her claim that must be proved. It was her claim against I. J. Sharick that was secured by the bond executed by the appellees. She is the creditor of the bankrupt, not the sureties of her debtor. Section 57i of the present bankrupt act (Act July 1, 1898, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) expressly provides:

"Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name; and if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

The rights of the appellees in the premises are thus stated and defined by the statute in plain and unambiguous language. Referring to it and persons in the position of the appellees, Collier on Bankruptcy (3d Ed.) p. 383, says:

"Where the bankrupt is the principal debtor, and there is a fixed liability on his part, even though the liability of his surety to the creditor is not fixed, and though, as a consequence, the liability of the bankrupt principal to the surety is not fixed, yet the surety, by the provisions of section 57i, may prove the claim, if the creditor does not do so. But in this case it is the fixed liability of the bankrupt to the creditor which is proved, not the contingent liability of the bankrupt to the surety. The surety proves not his contingent claim, but the claim of the creditor, and he must prove it in the creditor's name. If he makes such proof, and discharges such undertaking in whole or in part, he is to that extent subrogated to the rights of the creditor."

The judgment appealed from is reversed, with costs.