STATE BANK OF NEW SALEM, Respondent, v. FRED C. R.
  SCHULTZE, Defendant, and UNION FARMERS STATE
  BANK OF NEW SALEM, NORTH DAKOTA, a Corporation,
  Garnishee, and FARMERS & MERCHANTS STATE BANK
  OF NEW SALEM, NORTH DAKOTA, a Corporation, In-
  tervener and Appellant.

(199 N. W. 138.)

**Garnishment — right of garnishing creditor measured by right of judg-
ment-debtor in property garnished at garnishment.**

1. The right and interest of a judgment creditor who garnishes, to and
in property in the hands of the garnishee are measured by the right and in-
terest of the judgment debtor in such property at the time of the garnish-
ment.

**Contracts — third person may enforce contract made for his benefit at any
time before rescission; acts of parties may be such as to preclude
rescission of contract for benefit of third person to his detriment.**

2. Under § 5841, Comp. Laws, 1913, a third person, for whose benefit a
contract is made, may enforce it at any time before the parties thereto
rescind it; and where such third person subsequent to the making of such
contract acquires knowledge thereof, approves and accepts the same, and the
parties thereto acquiescing, acts affirmatively thereunder in assertion of
his interest therein, such contract may not thereafter be rescinded to his
detriment.

**Escrows — rights of one in money deposited by third person to be paid
to him of happening of contingency stated.**

3. Where money is deposited in a bank to be paid to a third person upon
the happening of a contingency, and the depositary accepts such deposit
and agrees to pay the same according to the terms thereof, provided that
proof of the happening of the contingency be made to it, the making of such
proof is not a condition precedent to the acquisition of any rights to the
deposit by the beneficiary under the terms thereof.

Note.—(1) Rights as between creditor and debtor in garnishment proceedings,
see 12 R. C. L. 853.

   (2) Right of third person to enforce contract made for his benefit, see 6 R. C. L.
889; 4 R. C. L. Supp. 450; 5 R. C. L. Supp. 376.

**Bankruptcy — listing claim of creditor by voluntary bankrupt does not rescind contract with another for benefit of creditor; creditor by proving claim held not to waive right to enforce contract of bankrupt with another for his benefit.**

4. One who files a voluntary petition in bankruptcy does not by listing the claim of a creditor thereby rescind a contract made with another for the benefit of such creditor. Nor does such creditor, by proving his claim against the bankrupt, waive his right to enforce a contract to pay such claim made by the bankrupt with another for the creditor's benefit.

**Bankruptcy — right of subrogation of one contingently liable on account of claim of another proven against estate stated.**

5. One who is contingently liable to a creditor of a bankrupt on account of the creditor's claim against the bankrupt estate may not prove such contingent claim against the estate except in event of the failure of the creditor to do so; and if such claim be proved either by the creditor or the person so contingently liable, and such person pay the claim to the creditor, he is subrogated to the rights of the creditor in the estate.

Opinion filed May 21, 1924.

Bankruptcy, 7 C. J. § 35 p. 38 n. 29 New; § 497 p. 306 n. 31 New; § 574 p. 337 n. 25. Contracts, 13 C. J. § 625 p. 602 n. 48; § 820 p. 713 n. 52 New. Escrow, 21 C. J. § 25 p. 881 n. 68 New. Garnishment, 28 C. J. § 336 p. 241 n. 27.

Appeal from the District Court of Morton County, *Berry*, J. Reversed.

*Newton, Dullam & Young,* for appellant.

When a garnishee has contracted with the principal debtor that he will pay the money or deliver the property to some third person, then the plaintiff in garnishment cannot recover because he is placed by the garnishment in the position of the principal defendant, who himself could not recover from the person made the garnishee. Shortridge v. Sturdivant, 32 N. D. 154, 155 N. W. 20; Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616.

" 'When a garnishee has contracted with the principal debtor that he will pay the money, or deliver the property, to some third person, then the plaintiff in garnishment cannot recover because he is only placed by the garnishment in the position of the principal defendant, who could not himself recover from the person made the garnishee.' 2 Shinn, Attachm. & Garnishments, ¶ 516; Baker v. Eglin, 11 Or.

333, 8 Pac. 280. And in a case of this character the assent of the creditor to the terms of the contract made for his benefit is presumed. Rodgers v. Gosnell, 58 Mo. 589." International Harvester Co. v. Hanson, 36 N. D. 84, 161 N. W. 608; Hatcher v. Plumley, 38 N. D. 155, 164 N. W. 698; Smith v. Clark, 9 Iowa, 241.

The deposit of funds to be paid upon the performance of certain conditions removes the funds from garnishment, as belonging to the defendant, after the performance of the conditions. Hearn v. Foster, 21 Tex. 401.

And it is the universal rule that a disposition in trust takes priority over subsequent garnishment. Fidelity Trust Co. v. New York Finance Co. 60 C. C. A. 189, 125 Fed. 275; Petrie v. Wyman, supra.

*"Priority between garnishment liens, and other liens or claims upon the same property, is generally determined by priority of time. The right first acquired is, as a rule, superior.* Rights under garnishment are subordinate to a good, pre-existing equitable assignment, though the latter is not perfect at law. . . . Again, the right of subrogation which arises upon payment by sureties of a judgment against the principal debtor takes priority over a lien acquired by garnishment entered after the judgment." 12 R. C. L. p. 848, § 90.

*Norton & Kelsch,* for respondent.

"When a debtor becomes bankrupt, the creditor is put to an election to proceed against the debtor or take his share of the debtor's assets in bankruptcy. The object of the proceedings against the debtor is in the hope that he may not get a discharge or may not plead it, or may not take the necessary steps to be in a position to plead it. In either of these cases the creditor will get a judgment against the debtor, which he can satisfy out of the property of the debtor, if any acquired after the date of the bankruptcy proceedings. On the other hand if the creditor wishes to entitle himself to his share of the bankrupt's estate he must make his proof against the estate in the court which has the collection and distribution of it." 7 C. J. 349, note 74.

"It is well settled that a party may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, and his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would

authorize a resort to each, will preclude him thereafter from going back and electing again." Roney v. Halvorsen Co. 29 N. D. 13.

NUESSLE, J. The plaintiff and respondent, State Bank of New Salem, sued the defendant, Fred C. R. Schultze, in contract and garnished the Union Farmers State Bank. The respondent obtained a judgment against the defendant Schultze which became final and remains unsatisfied. The garnishee, Union Farmers State Bank, filed its affidavit denying liability. Respondent elected to take issue with the garnishee. The Farmers & Merchants State Bank of New Salem, a corporation, intervener and appellant herein, made application and was permitted to intervene, and thereafter filed its complaint in intervention to which the respondent interposed an answer. The issue thus arising on the complaint in intervention was tried to the court, which found in favor of the respondent. Judgment was thereafter entered accordingly, and the intervener now appeals therefrom to this court.

The preliminary facts essential to an understanding of the controversy are substantially as follows: In 1917 the defendant Fred Schultze was owing the respondent bank on account of a note. His father, Max Schultze, had signed with him as surety. This obligation is the one on which the judgment in the instant case is founded. At the same time Max Schultze was indebted to the appellant for a considerable sum. Max had sold some land in Montana to one Goeschel. Goeschel owed a balance of $2,050 on the purchase price, which, under the arrangement made, he was to pay to Fred. An action was brought in Montana to set the transfer aside. In October Goeschel tendered the money that was owing, conditioned upon a favorable termination of this suit. Max Schultze attended to the transaction as agent for Fred. With the consent of Fred, and at the direction of Max, Goeschel conditionally tendered the money to the respondent to be applied on the joint note. The respondent refused to accept the conditional tender. Thereupon on October 23rd, 1917, the money was deposited in the First National Bank of New Salem, which later became the Union Farmers State Bank, the garnishee, in accordance with the terms of a written agreement reading as follows:

"This agreement made and entered into this twenty-third day of October, 1917, by and between Max Schultze, the party of the first part and Oscar Goeschel, the party of the second part.

"Witnesseth, That whereas the party of the first part has sold unto the said party of the second part, sections numbered ten and eleven, in township one north of range twenty-eight east, Montana principal Meridian, situated in the county of Yellowstone, state of Montana, and whereas there is a balance due on said purchase price of two thousand fifty dollars and whereas the said party of the first part is indebted and owing the Farmers & Merchants State Bank of New Salem, North Dakota, and his attorney, George W. Pierson, and is desirous of having said sum applied to indebtedness of said bank and his attorney and whereas there is a suit pending in the district court of the said county of Yellowstone, wherein the State Bank of New Salem is plaintiff, and each of the parties hereto and Minnie Schultze and Fred C. R. Schultze are defendants and that plaintiff in said cause is alleging, that the said second party is holding said land in trust for the said first party, when in truth and in fact the said second party is the owner of said described lands.

"Now therefore, It is hereby mutually stipulated and agreed by and between the parties hereto, that the said party of the second part shall make a deposit of the said two thousand fifty dollars in the First National Bank of New Salem, and that said deposit shall be paid as follows: Four hundred dollars to George W. Pierson and the remainder to the Farmers and Merchants State Bank of New Salem for the benefit of the said first party in the event it shall be determined in the above entitled action that the plaintiff therein is not entitled to the possession of said lands, or any interest therein or to any part of the purchase price thereof and in the event it is determined said lands or the purchase price can be or shall be subjected to the satisfaction of the claim of the aforesaid plaintiff, then the money aforesaid deposited in the First National Bank of New Salem, shall be payable and returned to the party of the second part.

"In witness whereof, each of the parties have hereunto set their hands in triplicate.

                                        (Signed) Oscar Goeschel.
                                        (Signed) Max Schultze.

It appears that although Max Schultze had no authority from Fred Schultze to do so at the time he made the contract to deposit the money for the benefit of the appellant, he was nevertheless the agent of Fred with reference to the disposition of the moneys; that subsequently Fred was apprised of the facts with reference to such deposit, and the same was ratified and approved by him, and Fred was to be reimbursed by Max.

The First National Bank accepted the deposit on the conditions set out in the agreement and agreed to pay the same according to the terms thereof, as evidenced by its indorsing upon the agreement,

"The undersigned accepts the conditions of the aforesaid agreement and the deposit in so far as it refers to it and agrees to pay said money according to the terms thereof and according to the terms of the aforesaid agreement, and a certified copy of the judgment entered in said cause, together with the certificate of the clerk, that the cause is finally determined will be its warrant and justification for making said payment.

"(Signed) First National Bank of New Salem."

and issued a cashier's check in the sum of $1,650 payable to the Farmers & Merchants State Bank, the appellant herein, but which it retained in its possession. Subsequently, the First National Bank was reorganized and reincorporated as the Union Farmers State Bank, the garnishee. The Union Farmers State Bank, accepting the conditions, retained the deposit as a part of its liabilities, and reissued its cashier's check payable to the appellant, which check it likewise kept in its possession.

Max Schultze was adjudicated a bankrupt in January, 1918, on his voluntary petition. His indebtedness to the appellant on which the deposit of $1,650 was to be applied was listed in his petition, and the appellant made proof in bankruptcy of all its claims against him, including such indebtedness. In April, 1918, McCormick, trustee of the estate of the bankrupt, brought suit against the Union Farmers State Bank to recover the deposit of $2,050 as made with it by Max Schultze, claiming that the same was the money of Max Schultze; that the deposit constituted a preference under the Bankruptcy Act, and that it

was made fraudulently and with intent to defraud the creditors of the bankrupt. In that suit also, the appellant, Farmers & Merchants State Bank, intervened, claiming that the deposit was in fact the money and property of Fred Schultze deposited for its benefit, and that there was no preference. The trustee answered the complaint in intervention, and on the issue as thus made it was determined that such moneys so deposited were in fact at the time of the deposit the moneys of Fred Schultze; that there was no preference; and that the appellant was entitled to the benefit of the deposit so far as its rights thereto could be determined under the issues as made therein. The opinion of this court affirming the judgment of the trial court was handed down in March, 1922. See McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 421.

In the meantime and in September, 1919, the Montana litigation had been terminated favorably to Goeschel, and under the terms of the deposit the money became payable to the appellant. However, the appellant made no demand and did not furnish the depositary bank with a certified copy of the judgment entered in said cause together with a certificate of the clerk that the same was finally determined.

In May, 1921, the instant case was begun and garnishment summons served on the Union Farmers State Bank. The garnishee denied liability. Respondent took issue on such disclosure, but trial was not had prior to the determination of the suit by the trustee. When that case was finally determined in March, 1922, appellant at once took steps to intervene and leave being granted, filed and served its complaint in intervention herein. In that complaint the appellant pleaded the fact of the indebtedness of Max Schultze to it; the deposit of the moneys in the garnishee bank by Goeschel and Schultze as hereinbefore stated; the termination of the litigation in Montana; that by reason thereof the money became and was the property of the appellant; the suit by the trustee, and the judgment therein.

The respondent, answering such complaint in intervention, admitted the obligation of Max Schultze to the appellant; the deposit in the garnishee bank as alleged; admitted the termination of the Montana suit, alleged the failure of the appellant to file a certified copy of the Montana judgment with the garnishee bank, denied the authority of the garnishee bank to issue a check, or to pay moneys to the appellant;

admitted the action by the trustee; and alleged that the moneys were the money and property of Fred Schultze, and were so adjudged in said action, and that the appellant was bound by the adjudication therein; that by reason of the listing of the claim of the appellant by Max Schultze in his petition, and the proof of such claim in bankruptcy by the appellant, and the discharge of the bankrupt, the appellant had no right to or interest in the money so deposited.

We have then this situation: Goeschel owed Fred Schultze, contingent upon the happening of a future event. Max Schultze owed the appellant. Goeschel, under a contract with Max, the agent of Fred, later ratified and approved by Fred, deposited the amount of his contingent debt with the garnishee bank to be paid to the appellant on the debt owed by Max upon the happening of the contingency, otherwise to be returned to Goeschel. The garnishee bank accepted the deposit and agreed to pay the same to the appellant if and when the contingency happened. Max was adjudged a bankrupt, and the appellant proved its debt against Max in bankruptcy. The appellant assented to the contract made by Max with Fred and the garnishee, approved the same and acted thereon affirmatively. Thereafter the contingency occurred. The garnishee proposed to pay the appellant according to the terms of the deposit, but was garnished by the plaintiff and respondent, the judgment creditor of Fred.

So far as the instant case goes, Goeschel is not concerned. The contingency happened and he ceased to have any further interest in the moneys deposited by him with the garnishee. Plaintiff and respondent, on the other hand, can have no other or greater right to the funds deposited with the garnishee than Fred Shultze had at the time of such garnishment, for its right and interest in and to such funds are measured by the right and interest that its judgment debtor had therein at the time of the garnishment. See Brocket Mercantile Co. v. Lemke, 39 N. D. 37, 166 N. W. 800; Hatcher v. Plumley, 38 N. D. 147, 164 N. W. 698 and cases cited; International Harvester Co. v. Hanson, 36 N. D. 78, 161 N. W. 608. So the sole question is as to the right and interest of Fred Schultze in and to those funds at the time of the garnishment.

In the first instance, the money was Fred's. With his consent and approval, it was to be devoted to the payment of Max's debt to the

appellant. But it was Fred's subject to a contingency. To protect Goeschel as against the failure of that contingency, it was deposited with the garnishee. Though not a party to the contract thus made, the appellant was the beneficiary of that contract and might enforce it at any time prior to its rescission. See Comp. Laws 1913, § 5841, providing:

"A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

It does not appear whether appellant had knowledge of the arrangement at the time it was made or, if it did not, when it acquired such knowledge. But in any event, it later approved of the arrangement and accepted it, for when McCormick, the trustee of Max's estate in bankruptcy, sued to recover the amount of the deposit from the garnishee, the appellant bank intervened and vindicated the right of the garnishee and its own right to the deposit as against all the parties to the suit. See McCormick v. Union Farmers State Bank, supra. Both Fred and Max had knowledge of that suit, for they testified therein as witnesses for the appellant concerning matters vital to the issue and the determination arrived at. Yet Fred did not ask to be made a party to the suit or assert any claim to the fund. Rather, he conceded the claim of the appellant and was content to permit it to sustain the burden of the litigation, and because of its claim to vindicate any right that he, Fred, might have had in and to the fund. Even though up to that time he might have revoked or rescinded the contract under which the deposit was made, (and we express no opinion in that regard) yet surely thereafter he could not do so. He was in any event, thenceforth estopped to deny the right of the appellant to the fund. And it is to be remembered that he has at no time since asserted, and is not now asserting any claim for himself. That claim is now made by his judgment creditor.

The respondent contends that the provision imposed by the garnishee bank when it accepted the deposit that "a certified copy of the judgment entered in said cause together with the certificate of the clerk that the cause is finally determined will be its warrant and justification for making such payment" constituted a condition precedent which the appellant was bound to perform before it could acquire any rights under the agreement of deposit. We think that there is no good ground

for this contention. What was the purpose of the provision? To protect the garnishee as against any responsibility to Goeschel, and nothing else. There were under the agreement two parties to whom the money might be paid; back to Goeschel, if the attack on his title to the land by the Montana suit was sustained; otherwise to the appellant. When the Montana suit was decided favorably to Goeschel, his interest in the moneys ceased. Thenceforth he had no concern as to what became of them. To protect itself, the garnishee bank required proof of that fact. So the provision. But the garnishee might waive such proof. Surely the respondent may not rely on the failure to make it. The right to the money was fixed by the fact—the happening of the contingency. The proof required was merely to satisfy the garnishee of that fact.

The respondent further contends that the rights of the respective parties herein were litigated and determined in the former suit, McCormick v. Union Farmers State Bank, supra; that in that action it was adjudged that the moneys on deposit with the garnishee bank were the property of Fred Schultze, and that the judgment therein concludes the appellant from any claim to such moneys; that the position now taken by the appellant is inconsistent with its position in the former suit. We think the respondent has misconceived the effect of the judgment in the McCormick Case. That judgment simply determined that the moneys here in question, when deposited with the garnishee, were the property of Fred Schultze; that by depositing them with the garnishee for the use and benefit of the appellant, there was no preference as against the other creditors of Max Schultze; that so far as the parties to that suit were concerned, the moneys were deposited for the use and benefit of the appellant and belonged to it. We can see no inconsistency in the position as assumed by the appellant in that suit, and that taken in the instant case. It was not precluded by the judgment in that suit from thereafter asserting and litigating its claim to the moneys so deposited as against Fred. In fact, its position in the instant case is predicated on the determination in the former suit.

The respondent also urges that prior to the happening of the contingency on which the money became payable to Fred, Max filed his voluntary petition in bankruptcy and listed the indebtedness to the appellant, and Fred approved of such action with reference to such in-

debtedness, thus indicating positively a revocation or rescission of the arrangement whereby the debt was to be paid with the money. Not only that, says the respondent, but the appellant assented thereto, proved the claim, shared in the estate, and Max was discharged. Is there any basis for such contention that thereby Fred and Max revoked and rescinded the arrangement, and the appellant assented thereto? We think not. It must be borne in mind that when these things were done, the contingency had not happened. Max wanted to be discharged from his obligations through bankruptcy. To do so he had to list those obligations. Under his arrangement with Fred, if the money here in question became payable from Goeschel, it was to be used in paying the debt to the appellant, and Max was to reimburse Fred. But the contingency had not happened so Max was owing the appellant and not Fred. Therefore, it was necessary for Max to list the indebtedness to the appellant for his own protection and to accomplish the purpose of his bankruptcy. Likewise and because of the same facts, Fred had only a contingent claim against Max and could not prove it as such in bankruptcy. And likewise, for its own protection, the appellant must needs prove its claim since the deposit with the garnishee was available in satisfaction of that claim only upon the happening of the contingency. In fact, it was the duty of the appellant to prove the claim as well for the benefit of Fred as for its own benefit. Fred, by his contract made by Max, had agreed contingently to pay the debt of Max to the appellant. We think that he thereby came within the purview of § 57-i of the Bankruptcy Act of 1898 (30 Stat. at L. 544, chap. 541, Comp. Stat. § 9641, 1 Fed. Stat. Anno. 2d ed. p. 962) providing:

"Whenever a creditor, whose claim against a bankruptcy estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name; and if he discharge such undertaking, in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

Under this section it was the liability of Max to the appellant which had to be proved, and not the contingent liability of Max to Fred. Both claims, that of the appellant and that of Fred, could not be proved. If the appellant failed to prove its claim, then only could Fred prove it in order to protect himself. And when Fred paid the claim, he was subrogated to the rights of the appellant. See 2 Collier,

Bankr. 13th ed. pp. 1163 et seq.; Insley v. Garside, 58 C. C. A. 119, 121 Fed. 699, 10 Am. Bankr. Rep. 52; Rosenthal v. Nove, 175 Mass. 559, 78 Am. St. Rep. 512, 56 N. E. 884; 7 C. J. p. 298; 3 R. C. L. p. 248.

However, if what we have last above said be right, it follows as a necessary consequence since the appellant was entitled to the moneys deposited with the garnishee bank, and since it proved its claim in bankruptcy for the indebtedness thus to be paid by such moneys, that Fred was entitled to be subrogated to the right of the appellant to any dividends that might be paid on account thereof from the bankrupt's estate, or if the appellant received dividends from the estate, then its claim to the moneys in the hands of the garnishee must be diminished to the extent of the dividends received on account of that part of the debt of the bankrupt so paid by Fred; and in that event the rights of the respondent judgment creditor attached to the same extent to such moneys. Although it does not clearly appear from the record in this case as to what dividends were paid to or received by the appellant, there is some proof that a dividend was allowed and paid. So while it appears that Fred thereby had an interest in the moneys held by the garnishee, it is impossible from the present record to ascertain the extent of that interest.

Therefore, the judgment of the district court will be reversed, and the case remanded for further disposition in accordance with this opinion.

BRONSON, Ch. J., and JOHNSON, CHRISTIANSON, and BIRDZELL, JJ., concur.