W. A. DOWNEY, Appellee, v. FRANK H. GIFFORD, Administrator, Appellant.

MARCH 13, 1928.

REHEARING DENIED OCTOBER 19, 1928.

*C. H. E. Boardman* and *J. H. Patton*, for appellant.

*Rayburn & Rayburn* and *Korf & Korf*, for appellee.

MORLING, J.—The ultimate question is whether an interest installment of $1,500, due October 1, 1924, for which a certificate of deposit was issued by the Merchants National Bank of Grinnell, and retained by it "in escrow" until after its failure, was discharged or paid thereby; or perhaps, more properly, Who must bear the loss on the certificate caused by the failure of the bank?

Defendant's intestate sold the hotel and personal property in question, located in Grinnell, on contract. The Monroe Hotel Corporation (hereinafter called "the corporation") became the owner of the vendee's rights thereto. The corporation objected to the vendor's title to the real property, because of a reservation in an antecedent deed. By written "escrow" agreement, dated September 17, 1924, a conveyance and note and

mortgage for the balance of the purchase price, $60,000, all dated April 1, 1924, were deposited, with the abstract, with the Merchants National Bank, pending the determination of merchantability, which, by the agreement, was submitted to the district court for adjudication. On September 29, 1924, the district court, in deciding on the agreed case, declared the title unmerchantable. By the terms of the note, an installment of interest, amounting to $1,500, would become due October 1, 1924. Mr. Pulliam was the manager of the corporation. Mr. Johnson, of Oskaloosa, was its attorney. Mr. Patton was attorney for defendant. Mr. Pulliam testifies without contradiction:

"Following the trial of the case, I recall a conversation between myself and Mr. Patton, as attorney for Mr. Gifford [defendant], about payment of interest that would fall due on the 1st day of October, 1924. * * * Mr. Patton suggested that it be put up in interest-bearing paper, so whoever it fell to, or belonged to, and the settlement was finally made so they would be getting some interest on the money held up. * * * We were ready to pay the interest at that time. * * * There was an escrow agreement or contract that Mr. Patton had drawn up while we were in his office. We went down to the bank [Merchants National Bank] to carry out that escrow agreement. * * * I wrote a check for the corporation to the bank for $1,500. The bank made the payment for $1,500. They issued a certificate of deposit for $1,500 in Mr. Gifford's name. * * * That certificate of deposit was not delivered to Mr. Gifford. It was delivered to the * * * Merchants National Bank. * * * I had a reason for drawing the check to the bank, and not to Mr. Gifford. I had confidence in the bank, but that was not the reason. I put it up to Mr. Patton just in the form it was. It was agreed to by Mr. Patton and Mr. Johnson and I. * * * Whoever made the suggestion, I agreed to it and carried it out. I would have been glad to have given Mr. Gifford the $1,500 that day, but the reason I could not was because of the correcting of the title."

The "escrow" agreement of September 17, 1924, recited that the deeds and bill of sale for the property and the $60,000 note and mortgage were "deposited with the Merchants National Bank of Grinnell, Iowa, in escrow, pending the decision of said district court as to the questions submitted to said court in said

agreed statement of facts, said papers to be held in escrow by said Merchants National Bank until such decision and upon a decision by said court, the Merchants National Bank to then deliver said warranty deed, bill of sale, and two quitclaim deeds to the Monroe Hotel Corporation of Iowa, and deliver to Frank H. Gifford, administrator, said note and mortgage."

By the "deposit in escrow" agreement of October 1, 1924, it is provided:

"The inclosed certificate of deposit issued by the Merchants National Bank of Grinnell, Iowa, for $1,500, dated October 1, 1924, and payable to Frank H. Gifford, administrator * * * being the interest due October 1, 1924, on the $60,000 promissory note executed by the Hotel Monroe Corporation of Iowa and payable to said administrator, and now on deposit in escrow with said bank, is to be kept by said bank on deposit until such time as said $60,000 note and mortgage securing same is released to said administrator under the agreement accompanying the deposit of said note and mortgage."

In the transaction of October 1, 1924, the Monroe Hotel Corporation made its check for $1,500, dated October 1, 1924, payable to Merchants National Bank. It had on it the notation, "In payment of int. to F. H. Gifford Admr. due Oct. 1-1924." The certificate of deposit of Merchants National Bank, dated October 1, 1924, "certifies that F. H. Gifford, Admr. has deposited in this bank payable to the order of self $1,500 * * * payable in current funds when properly endorsed. Bears interest at the rate of 5 per cent, per annum, payable 3, 6, 9 or 12 months after date. * * *. No interest after one year."

The deposit agreement and the certificate were inclosed in an envelope, on which was written, by agreement of the parties concerned:

"The certificate inclosed $1,500 payable to Frank H. Gifford Admr. is subject to escrow agreement inclosed. This to be opened only by authority of said administrator and the Monroe Hotel Corporation."

A suggestion had been made of the possibility of getting quitclaim deeds which would remove the objection to the title.

During October, 1924, defendant's attorney procured such deeds. He testifies that he told Pulliam:

"We will send you the deed and the mortgage and the quitclaim deeds from the Grinnell heirs and from F. H. Gifford, and the abstract. We will send them all down at one time; have the abstract showing the quitclaim deeds and showing the deed from Gifford, Admr. to the Monroe Hotel Corporation and expedite the matter, and not require two sendings of the abstract and two costs in bringing it forward."

Pulliam said he would send the deeds to his attorney, to which defendant's attorney replied that, before this was done, he wanted them recorded. He had them recorded October 28, 1924, and the next day took them to Pulliam, saying:

" 'Now the quitclaim deeds are now a matter of record, and the title is corrected. I want all these papers released.' * * * Before he would do anything further with it, he wanted an appraisement made of that personal property, so as to separate what the mortgage actually covered and what was subsequently added to the personal property. I said to him, in substance, that could make no difference in the clearing of the title and releasing of these escrow papers and turning over to Mr. Gifford the certificate of deposit. * * *. The only objection he had then to releasing certificates of deposit * * * was, he wasn't going to do it until an inventory was made of the personal property."

Mr. Patton gave the quitclaim deeds to Mr. Pulliam; who submitted them to Mr. Johnson, at Oskaloosa. Mr. Patton says that his recollection is that Mr. Pulliam "delivered these deeds back to me, saying he would do nothing with them until that inventory was made. I have had those deeds in my possession ever since." (The evidence is in conflict as to who held the deeds.)

The original contract is not in the record. An abstract of title was in the bank, and it is assumed in the evidence that the abstract, properly continued, was to be furnished. Mr. Patton says:

"I had an abstract of title at that time. The abstract of title had, at a prior date, been deposited, under an agreement

with Mr. Gifford, as administrator, and the Monroe Hotel Corporation, sealed up in the Merchants National Bank, and was there at the time I was requesting it to be delivered. The abstract of title did not show a merchantable title, because it was, under this agreement, sealed up in the bank. The abstract of title had been continued previously for the purpose of this sale, for the purpose of making the deed. This was some time in 1923. It had been brought up to the date of the escrow agreement. * * * Q. No abstract of any kind was tendered to Mr. Pulliam, or the Monroe Hotel Corporation, or their attorney, showing any of those facts, was there? A. Well, unless my demand that the abstract and the other papers should be released and delivered would constitute a tender.''

Defendant's attorney testifies also:

''There was also an abstract of title to the Monroe Hotel * * * These papers were placed in the Merchants National Bank of Grinnell, Iowa. They stayed there until April 6, 1925.''

On the record, it must be found that the abstract of title, properly continued, was not furnished until April 6, 1925.

The Merchants National Bank did not open its doors on or after November 1, 1924. On April 6, 1925, an agreement between the defendant and the corporation (set out later) was made, by which, on performance of specified conditions, the personal property was to be discharged from the mortgage.

The $60,000 note has indorsed on it:

''The interest due on this note on October 1, 1924, is represented by a C. D. in the Merchants National Bank of Grinnell, Iowa, as an escrow deposit awaiting determination as to its value and who shall stand the loss caused by the failure of said bank.''

Defendant argues, in substance, that the interest due October 1, 1924, was paid only conditionally by means of the certificate of deposit, and, the bank having failed, the loss falls on the corporation.

We are of the opinion that the purpose of the parties in the arrangement of October 1, 1924, was to discharge the liability of the maker of the note, assumed therein, to pay the semiannual installment of interest due October 1, 1924, and to

substitute the certificate of deposit for that contract obligation. It is clear that the corporation was ready to pay the interest, and had available funds with which to pay it; but, under the decision of the court, rendered two days before, was not only not bound to pay, but, because of the defective title, was unwilling to make direct and absolute payment to defendant. The defendant's inability to comply with its contract was a legitimate reason for the corporation's attitude. This was recognized by the defendant. The corporation might have made a tender and demand. Defendant could not have complied. Thereby he would lose the use of the money. It was thereupon agreed, at defendant's instance, that the interest "be put up in interest-bearing paper, so whoever it fell to or belonged to, and the settlement was finally made so they would be getting some interest on the money held up." Both parties had confidence in the Merchants National Bank, and were willing to accept its certificate. Their thought was to put the $1,500 in such a certificate. Defendant previously had the corporation's obligation to pay interest, but defendant could not comply with the conditions of that obligation, so as to be entitled to the use of the money. He wanted something different. He wanted interest-bearing paper. The parties agreed upon the specific thing, the interest-drawing certificate of deposit in the Merchants National Bank. The purpose of the parties was to put this certificate in the bank in substitution for the obligation of the corporation to pay the interest. If defendant made the title good, that particular thing, the certificate with accrued interest, would belong to him. That particular piece of property was devoted to the payment of the interest, and was to become the property of the defendant when he made the title good. If not, and the deal was thereby thrown up, the certificate would belong to the corporation. The corporation gave its check for the interest. The check was paid. The certificate was made payable to defendant, and was his conditionally on his performance of his contract. Performance of the condition depended on him, not on the corporation. The corporation had fully performed its contract, even to the payment of the interest in the manner suggested by defendant and mutually agreed upon. The corporation's funds available for its immediate withdrawal and use were converted into a time obligation, the right and time of receiving

which depended on, not the corporation, but defendant. Defendant has never rescinded this arrangement, nor shown ground for rescission. He says that the reason he did not get the certificate before the bank failed was that the corporation required an inventory of the personal property. Whether the corporation was entitled to such inventory, we do not know. Defendant made no objection to the demand, and did not bring down to date or tender his abstract of title. The so-called "escrow" arrangements are quite defective, as a strict escrow. The one of September 17, 1924, provides for delivery on the court's decision, without any reservation in case the decision should be adverse to the title. The agreement of October 1, 1924, provides that the certificate, "being the interest due October 1, 1924," is to be kept on deposit until such time as the $60,000 note and mortgage are released. A memorandum on the envelope provides that it is to be opened only by authority of both parties,—not on compliance with specified conditions. The grantee or obligee in an escrow agreement is entitled to delivery, and becomes the owner, when he has made substantial performance, even though actual delivery to him is not made, but is wrongfully refused. *Naylor v. Stene*, 96 Minn. 57 (104 N. W. 685); 21 Corpus Juris 881, 889; *Val Verde Hotel Co. v. Ross*, 30 N. M. 270 (231 Pac. 702); *State Bank of New Salem v. Schultze*, 51 N. D. 66 (199 N. W. 138). See *Hoyt v. McLagan*, 87 Iowa 746; *Mohr v. Joslin*, 162 Iowa 34. By procuring the quitclaim deeds, the defendant had in fact cured the defect in the title, which was the substantial thing. If the defendant had received the certificate, he could not legally have demanded payment before January first, two months after the bank closed. His claim here is not for damages for the corporation's refusal to permit him to take the certificate. Defendant stresses in argument the indorsement on the envelope containing the certificate, that the envelope was "to be opened only by authority of said administrator and the Monroe Hotel Corporation,"—contending that the corporation retained dominion over the certificate. The corporation retained no more dominion than did defendant. That each party might safeguard his interest, it was so provided by the indorsement on the envelope; but, if the defendant had performed his contract, the corporation would have no right to refuse to have it opened and the certificate delivered.

Defendant leans heavily on *Dille v. White*, 132 Iowa 327, but in that case it was said:

"If this were a case in which, as urged by appellant's counsel, the appellee could fairly be said to have negotiated for the purchase from appellant of checks or drafts which had been drawn by the Citizens' Bank, it could then be conceded that, under the ordinary rule, the delivery of the instruments which were the subject of the negotiation would have served to pass the title, and, in the absence of fraud or misrepresentation by the appellant, the risk of the bank's failure before payment would have been borne by the former. But such is not the case here presented. Appellee was not purchasing or desiring to purchase commercial paper of any kind from the appellant. He was a borrower, seeking a loan of money with which to complete a land purchase. The appellant undertook to lend him the desired sum of money, not to sell him commercial paper or securities. The terms of the loan had been fully agreed upon before anything was said as to the manner or form in which the specified sum should be paid over; and the checks or drafts were given and accepted, not as the money itself, but as a convenient mode of obtaining the money."

*Bolte v. Schenk*, 205 Iowa 834, is also relied on, but is not in point. In *Bolte v. Schenk*, the purchase money was deposited by the purchaser, to be paid to the numerous vendors upon proper completion of the title papers. One of the vendors "signed a receipt for the purchase price as represented by such certificate." This deposit was made pursuant to a meeting at which none of the vendors was present, but an attorney, "'assuming to represent them, agreed with defendant and his father, who was aiding him in securing the money, and the $21,500 should be deposited in the Bank of Kelso; whereupon the money was taken to that bank, and the following receipt, which had been prepared by F. H. Schwirtz in his office, issued, in duplicate, the money being deposited in the Bank of Kelso by the defendant.'" The bank thereupon made out a certificate of deposit in the usual form, payable to one of the vendors but it was never delivered to her. The district court held:

"'There can be no claim that she then accepted this receipt in payment. What she wanted was the money. [What

defendant wanted here, not being entitled to the money, was interest-bearing paper, recited as "being the interest."] Furthermore, there can be no question that, at the time this receipt was executed by her, October 3d, 1922, the bank was insolvent, and there was no money there.' "

Here the check was presented. The bank was open, and doing business. It does not appear that the check would not have been paid, if demanded, or if interest-bearing paper other than the certificate of deposit were wanted. It is said in the *Bolte* case:

"The broad contention for the appellant is that the money thus deposited by him was so deposited under and by virtue of an arrangement between him and the alleged agents of Mrs. Bolte and her children. These alleged agents were Joseph Kelso, the principal owner and manager of the bank, and Schwirtz, an attorney, who had been conducting the guardianship proceedings for the incompetent Frederick. The argument is that Schwirtz drew the receipt, which was signed by the bank and delivered to the vendee, and that it was the mutual understanding and intention that the money thus deposited was to be deemed the money of the Boltes. The trial court found the preponderance of the evidence against the vendee on this question of agency. * * * A reading of the record brings us to the same conclusion. It will be noted that the receipt issued by the Kelso Bank to the vendee did not purport to transfer title of the funds to the Boltes. Nor was any authority conferred thereby to pay the same to the Boltes, except upon the conveyance of good title to the farm. While such condition remained unperformed, the depositor retained the title and control of the funds. * * * The fact that the bank signed a formal certificate of deposit purporting to be issued to Mrs. Bolte furnishes little aid to the appellant. Such certificate was, on its face, inconsistent with the receipt held by the appellant. Furthermore, it was wholly ineffective for want of delivery. Though Kelso testified that he showed the certificate to Mrs. Bolte, and was directed by her to retain it, yet the trial court found the fact against such testimony; and we have no doubt of the correctness of such finding, upon this record."

There is in the present case no question of agency or of

authority or of the making of a deliberate agreement. That agreement, in substance, was to discharge the mortgagor's obligation to pay interest by putting the money in this particular interest-bearing security, and depositing that particular thing, with its interest-bearing and postponed date of payment qualities, payable specifically to defendant, specifically deliverable to him with the note and mortgage. The deposit in escrow agreement of October 1, 1924, expressly recites the certificate as "being the interest due October 1, 1924, on the $60,000" note; that the certificate is to be kept on deposit until the $60,000 note and mortgage are released to the administrator. The envelope recites the certificate as subject to escrow agreement. The certificate became a part of the papers, and was to be delivered with them. It was the interest, not an obligation to pay interest, and was to be delivered as the interest, with the note. The interest obligation of the note and mortgage was clearly discharged.

Defendant urges that the agreement of April 6, 1925, was a mere gratuity, without consideration. This agreement recites the execution of the $60,000 note and mortgage, covering real and personal property; that the note is payable in twelve annual $5,000 installments, with semi-annual interest, "one of said $5,000 installments being due April 1, 1925, and one $5,000 installment being due April 1, 1926, with interest as stated." The agreement proceeds:

"The said Frank H. Gifford, administrator, hereby agrees that upon the payment by mortgagor of said five thousand dollar installment on the principal note due April 1, 1925, and the payment of the five thousand dollar installment due on said principal note on April 1, 1926, together with all interest then due upon said principal note, and the payment of all taxes assessed against said described property and due and payable under the law, and the payment by mortgagor of all insurance premiums on policies of insurance required under said mortgage for the protection of mortgagee, and the deposit in the Citizens National Bank, Grinnell, Iowa, of insurance policies covering the buildings on said described real estate, and the personal property therein in an aggregate amount equaling the indebtedness of mortgagor under said mortgage, and the painting by mortgagor

of said Monroe Hotel property in the year 1925, upon the payment of each and every of said items and the performance by mortgagor of each and every of said items, the said Frank H. Gifford, administrator, will release of record the lien of said mortgage, which is also filed of record as a chattel mortgage, as to all of the personal or chattel property referred to and described in said mortgage, and upon the payment and performance by mortgagor as aforesaid said personal property and chattels shall stand released of record.

"And said second party hereby agrees to make said payments of principal and interest and taxes and insurance premiums and to do said painting and deposit said insurance policies as above stipulated in manner and form heretofore stipulated."

Defendant's argument is that the corporation thereby agreed to do no more than it was previously under obligation to do, and that the agreement cannot be construed into a waiver of the interest due October 1, 1924, in controversy. The plaintiff testified that he did the things required by this contract, but that the taxes and the interest that were paid and the painting that was done were paid and done under the contract that preceded that of April 6, 1925; that, when he said the insurance had been kept up, he meant the insurance referred to in the mortgage, and he meant that "the owner of the property had simply performed the things required under the prior contract."

As has been said, the prior contract is not in the record. The mortgage required fire insurance in the amount of $54,000 and tornado insurance to the amount of $40,000. The agreement of April 6, 1925, required the deposit of policies equaling the indebtedness under the mortgage. If the $5,000 installment was paid that day, the principal of the indebtedness on the mortgage would still be $55,000, the amount of the insurance which, under the new agreement, would have to be maintained, and more than was required by the mortgage.

But, regardless of this, the defendant was originally at fault. It was at his instance that the interest due October 1, 1924, was converted into the certificate of deposit. The contract is in writing, and a consideration is presumed. The burden is on defendant to show the absence of consideration. Consideration may consist in benefit to him or inconvenience or detri-

ment to or waiver by the promisee. There is no evidence that the corporation, in entering into this contract, did not suffer an inconvenience, or did not waive its rights. The contract was a mutual adjustment of the rights of the parties under their previous contracts. See *Rowe v. Rowe*, 187 Iowa 640. The contract does not, in terms, refer to the interest installment in controversy. The agreement is valid, and has been fully performed by plaintiff. Under it the owner of the personal property is entitled to have the lien of the mortgage thereon released. The plaintiff is now the owner of the property. It is immaterial that he was not a party to the contract. As such owner, he is entitled to maintain this action.—*Affirmed.*

STEVENS, C. J., and DE GRAFF and ALBERT, JJ., concur.

KINDIG, J., concurs in result.

WAGNER, J., not participating.