ADALINE BOLTE et al., Appellees, v. JOHN N. SCHENK, Appellant.

NOVEMBER 16, 1926.

REHEARING DENIED MARCH 17, 1928.

*Kintzinger & Stuart,* for appellant.

*W. L. Keck, E. L. Miller,* and *J. B. Degnan,* for appellees.

Evans, J.—I.   The controversy herein is between two innocent parties, one of whom must suffer a loss as a depositor in an insolvent bank.   A contract of sale of a farm was entered into  between plaintiffs, as vendors, and the defendant, as vendee, on October 14, 1921.   The purchase price agreed on was $22,500, to be paid in cash on March 1, 1922, upon conveyance of a good title by the vendors at the same time.   Of this purchase price $1,000 was paid in November, 1921.   The unpaid balance, therefore, was the sum of $21,500.   The vendors were the widow and heirs of ——— Bolte, recently deceased, who owned the farm in question at the time of his decease.   The contract of sale was signed by all the plaintiffs except Frederick, who was at that time an incompetent.   In order to accomplish the conveyance of the interest of Frederick, guardianship proceedings had to be instituted, and authority to make sale had to be obtained.   Because of this necessity of guardianship proceedings, the vendors were not ready to convey title on March 1, 1922.   The defendant, however, took no advantage of the default of the vendors in that respect, and both parties elected to treat the contract as in force and effect.   The vendee went into actual possession of the farm on March 1, 1922, and so continued ever after.   Deeds of conveyance were delivered on October 3, 1922.   In the meantime, and on March 2, 1922, the defendant deposited $21,500 in the Kelso Bank, and took the following receipt therefor:

> "F. H. Schwirtz.
> "Lawyer.
> "Bellevue, Iowa.

> "Receipt.

"This is to certify that there has been this day deposited in the Bank of J. Kelso, Bellevue, Iowa, the sum of twenty-one thousand five hundred ($21,500.00) by John N. Schenk, to be paid to Adaline Bolte, Albert Bolte, Annie Schroeder, Ella Bolte and Adaline Bolte, guardian of Frederick Bolte, upon proper completion of papers necessary to title of farm, which is purchased by John N. Schenk.

"Dated this 2nd day of March, A. D. 1922.

> "[Signed] Jos. Kelso, Jr., Cashier."

The foregoing receipt was indorsed and turned over to Mrs. Bolte on October 3, 1922. At the same time, she signed a receipt for the purchase price, as represented by such certificate of deposit. The Kelso Bank closed its doors on October 12, 1922. It had been insolvent for a long time, and was undoubtedly insolvent at the time the deposit was made. It did not treat the deposit as a trust fund, nor did it protect it in any manner, but dissipated it wholly. The question in the case is whose money was thus dissipated and lost by the Kelso Bank.

In his written opinion, filed in the case, the trial court. recited the following as undisputed facts:

"On the 14th day of October, 1921, the plaintiffs, Adaline Bolte, Albert Bolte, Annie Schroeder, Ella Bolte, and Frederick Bolte were the owners of the real estate in controversy, they being the widow and children, sole heirs at law, of one Christian Bolte, deceased. Adaline Bolte and Albert Bolte, acting for themselves, and assuming to do so upon behalf of the other plaintiffs, entered into an oral agreement, whereby they sold to the defendant, John N. Schenk, said real estate, a condition of such sale being that he was to pay them, on the 1st day of March, 1922, the sum of $22,500 in cash, at which time. they were to deliver good and sufficient conveyances for the land and posses-. sion thereof, said Albert Bolte at the time occupying it. This oral agreement was finally reached at the home of Adaline Bolte, in Bellevue, and Mr. J. C. Campbell, an attorney of that city, was called in to reduce it to writing. This he did, and the contract was signed by her and Albert Bolte, Mr. Campbell taking it to have it also signed by the other parties interested, except Frederick Bolte. They all signed shortly thereafter. In gathering data for the execution of the contract, Mr. Campbell learned that Frederick Bolte was a person of unsound mind, and advised Mrs. Bolte and Albert that it would be necessary to have a guardian appointed for him, before his interest could be sold or conveyed, and Mrs. Bolte engaged him to secure her appointment as guardian, and the execution of the proper papers. This he set about doing. On January 10th, 1922, said Adaline Bolte was commissioned by this court as guardian of the personal property of said Frederick Bolte. This seems to have been as far as Mr. Campbell proceeded, and he died on the 23rd day of that same

month. On the 1st day of March, 1922, the defendant, John N. Schenk, took possession of said real estate, and Albert Bolte removed therefrom. Plaintiffs not being in position to give good title to the land, the defendant did not pay the $22,500 due on that day, though, for some reason which is not made very clear by the evidence, on November 26, 1921, $1,000 thereof was paid to Mrs. Bolte. Subsequent to the death of Mr. Campbell, Mr. Joseph Kelso, Jr., cashier of the Bank of Kelso, of Bellevue, Iowa, procured from the daughter of Mr. Campbell the papers he had relating to this farm and the guardianship of Frederick, and employed F. H. Schwirtz, another lawyer of Bellevue, to complete the authority of the guardian to sell, and the sale and deed. This employment was apparently with the knowledge and consent of Adaline Bolte. The Boltes objected to the defendant, retaining possession of the land without payment, and he did not feel willing to make payment until he secured a good title. On the 2d day of March, a meeting was held in Mr. Schwirtz's office, at which meeting none of the Boltes were present, but Mr. Schwirtz, assuming to represent them, agreed with defendant and his father, who was aiding him in securing the money, and the $21,500 should be deposited in the Bank of Kelso, whereupon the money was taken to that bank, and the following receipt, which had been prepared by F. H. Schwirtz in his office, issued, in duplicate, the money being deposited in the Bank of Kelso by the defendant: [Above set forth.] One copy of this was delivered to defendant's father, Wm. Schenk, the other being retained by Mr. Kelso. On the same day, the bank issued a certificate of deposit in the usual form to Mrs. C. Bolte, stating that 'Mrs. C. Bolte has deposited in this bank $21,500, payable to the order of herself.' This certificate was never delivered to her, but was retained by the bank. Matters remained in this situation until October 3d, 1922, when, the guardian's deed being complete and ready for delivery, and some other minor defects in the title having been cured, the deed of all the plaintiffs except Frederick, and the deed of Adaline Bolte, as his guardian, were delivered by it to Wm. Schenk, defendant's father, was by him delivered to Mrs. Bolte, she at the same time giving to defendant her receipt, as follows:

" 'F. H. Schwirtz

" 'Lawyer.

" 'Bellevue, Iowa.

" '10/3/22

" 'This is to certify that I have delivered deeds to John N. Schenk and that I have received the balance of the purchase price due me on farm in Tete des Morts Township, said balance being on deposit in the Bank of J. Kelso.

" '[Signed] Adaline Bolte.'

"Eight days after the exchange of these papers, to wit, October 11, 1922, the bank failed, and none of plaintiffs have ever received any part of said balance of $21,500 due upon the purchase price of this land. No attempt was made by any of the plaintiffs, at any time after defendant took possession of the farm, to dispossess him. No demand was ever made of him for possession. It is clear from the evidence that 'Mrs. Bolte and Albert were acting for all of the plaintiffs in the sale of the farm, and, aside from Frederick, what they did was with the consent and approval of the others; that Mrs. Bolte understood that this $21,500 had been deposited in the Bank of J. Kelso, and was awaiting the completion of the guardian's deed and the delivery of the two deeds, when it would be paid to her. Were this all there was to this case, its decision could be made without much difficulty. It is clear that, even if we agree that plaintiffs knew that the money had been deposited in the bank by defendant, it was in no manner under their control. The only receipt issued was held by defendant's father, who, according to the evidence, assumed that it could not be drawn until his receipt had been surrendered. He probably was right in that, for who else could decide when the papers were properly 'completed?' That he surrendered it to Mrs. Bolte only after the deeds were delivered to his son, and that she receipted for the money at that time. There can be no claim that she then accepted this receipt in payment. What she wanted was the money. Furthermore, there can be no question that, at the time this receipt was executed by her, October 3d, 1922, the bank was insolvent, and there was no money there.''

It appears also that the cashier of the Kelso bank issued a formal certificate of deposit, running to Mrs. Bolte, as payee, for

the same amount. This certificate, however, was never delivered to Mrs. Bolte, nor did the bank at any time part with its control thereof.

The broad contention for the appellant is that the money thus deposited by him was so deposited under and by virtue of an arrangement between him and the alleged agents of Mrs. Bolte and her children. These alleged agents were Joseph Kelso, the principal owner and manager of the bank, and Schwirtz, an attorney, who had been conducting the guardianship proceedings for the incompetent Frederick. The argument is that Schwirtz drew the receipt, which was signed by the bank and delivered to the vendee, and that it was the mutual understanding and intention that the money thus deposited was to be deemed the money of the Boltes.

The trial court found the preponderance of the evidence against the vendee on this question of agency. It held that, if Kelso and Schwirtz were agents to any extent, they were such only for the purpose of making a good title to the vendee by pursuing the guardianship proceedings in the matter of Frederick. A reading of the record brings us to the same conclusion. It will be noted that the receipt issued by the Kelso bank to the vendee did not purport to transfer title of the funds to the Boltes. Nor was any authority conferred thereby to pay the same to the Boltes, except upon the conveyance of good title to the farm. While such condition remained unperformed, the depositor retained the title and control of the funds. *Dille v. White*, 132 Iowa 327; *Bellevue Bank v. Security Nat. Bank*, 168 Iowa 707; and *Sanitary Can Co. v. National P. & C. Co.*, 191 Iowa 1259.

The fact that the bank signed a formal certificate of deposit, purporting to be issued to Mrs. Bolte, furnishes little aid to the appellant. Such certificate was on its face inconsistent with the receipt held by the appellant. Furthermore, it was wholly ineffective for want of delivery. Though Kelso testified that he showed the certificate to Mrs. Bolte, and was directed by her to retain it, yet the trial court found the fact against such testimony; and we have no doubt of the correctness of such finding, upon this record. Neither the vendors nor the vendee knew that the bank was insolvent. Neither of them distrusted it in that respect. In weighing this evidence, and in finding the truth

therefrom, we consider it in the light of the assumption that neither party was distrustful of the solvency of the bank. The vendee did the natural thing,—to keep himself secure until he received his title. He therefore attached a string to his deposit, which held the title and control of the funds within himself until such title to the farm should be conveyed. He did not fully trust the vendors, but did trust the Kelso bank implicitly. We see no escape from the conclusion of the trial court that this deposit, when lost, belonged to the vendee.

II. The appellant asks relief here against a stipulation pursuant to which the testimony of Mrs. Bolte was received in evidence. Mrs. Bolte died before the trial. Shortly before her death, the following stipulation was entered into:

"It is hereby stipulated and agreed by the parties plaintiffs and defendant in the above entitled suit as follows: That, whereas the June term, 1923, is the trial term for the above entitled action, and whereas the plaintiff Adaline Bolte is in ill health, and may be unable to give her testimony at the trial of said cause, it is stipulated and agreed that, in lieu of the evidence and testimony of said Adaline Bolte, and in lieu of her deposition, which might be taken herein, that the following statement shall be and is the testimony of the said Adaline Bolte, and shall be read into the record of said trial as her testimony, and shall be of the same force and effect as though testified to by the said Adaline Bolte under oath in open court, and in the trial said cause shall be considered as and for testimony of said Adaline Bolte. Dated 7-25-23.

"[Signed] W. L. Keck,

"Attorney for Plaintiff.

"F. H. Schwirtz,

"Attorney for Defendant."

A statement of her purported evidence was attached to such stipulation. It is earnestly complained here that Attorney Schwirtz was not authorized by his client to enter into such  stipulation, and indeed that he was not authorized at all to represent his purported client. It is urged that he was, in fact, the attorney and representative of the appellees, and that the stipulation was entered into collusively between him and the record attorney of appellees. The evidence thus stipulated is a

very important part of the record. Schwirtz appeared as attorney of record for the defendant. No attack was made upon the stipulation, nor upon the purported testimony of Mrs. Bolte in the court below, either before trial or at the time thereof. That was the place and the time for the consideration of the charges now made in this court. Needless to say that such charges are untimely and out of place here, and are entitled to no consideration.

We have no occasion to consider the question of escrow, or the legal effect thereof. There was no agreement for escrow, unless Kelso or Schwirtz was authorized to make it. As already indicated, they had no such authority. An escrow could be created only by an agreement by the parties. Moreover, even in escrow, the title would remain in the depositor until the performance of the condition. *Mohr v. Joslin*, 162 Iowa 34.

Nor do we see any relief for the appellant from the argument that the delay of the vendors in furnishing title was the cause of the loss. In the absence of some participation in or control of the deposit, the appellees could not well be chargeable with its loss. Moreover, as already indicated, the bank was insolvent when the deposit was made, and the fund was dissipated forthwith.

We are not unmindful that the loss operates as a great hardship upon the appellant, as an innocent person, but it is such a hardship as inevitably falls upon every depositor in an insolvent bank. The trial court properly awarded relief to the plaintiffs. The particular form of it is not complained of.

The decree is, accordingly, affirmed.—*Affirmed.*

De Graff, C. J., and Albert and Morling, JJ., concur.