AMERICAN STATE BANK, an Iowa Banking Corporation, Appellant,

v.

Ted ENABNIT and Enabnit & Keen, P.C., Appellees,

and

Henry M. Kraayenbrink, Third–Party Defendant.

No. 90–370.

Supreme Court of Iowa.

June 19, 1991.

Larry J. Cohrt of Swisher & Cohrt, Waterloo, for appellees.

Charles T. Patterson and John C. Gray of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellant.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

The question is whether, by a course of conduct, an attorney became obligated to pay for his client's debt to a bank. The district court thought not and we agree. We thus vacate a court of appeals decision expressing a contrary view.

Plaintiff, American State Bank, does business at Sioux Center, Iowa. Its customers, Henry and Betty Kraayenbrink, executed a note to the bank, secured by a second mortgage on real estate the Kraayenbrinks owned at Clear Lake. The Kraayenbrinks later contracted to sell the Clear Lake property to Joseph and Nancy Emerson.

When the Emersons thereafter defaulted on the contract the Kraayenbrinks retained defendant Ted Enabnit, a Mason City attorney, to sue the Emersons, seeking reformation of the contract and money damages. The Kraayenbrinks defaulted on their note to the bank, and the bank sued the Kraayenbrinks and the Emersons, seeking foreclosure of the mortgage.

The bank and the Kraayenbrinks settled the bank suit by stipulation. The bank agreed to forebear proceeding with the mortgage foreclosure (though not to dismiss it) if the Kraayenbrinks turned over the full amount of any payments received from the Emersons. That amount became set at $55,974.18 when judgment was entered on behalf of the Kraayenbrinks in their reformation suit against the Emersons. An appeal by the Emersons was unsuccessful. Enabnit advised counsel for the bank that he would keep him informed on the matter.

Three checks were received by the clerk's office from the Emersons with respect to payment of the judgment. In May 1985, the Emersons made a check payable in the amount of $20,000 to the clerk of the district court of Cerro Gordo County. The clerk applied $1516.14 to court costs and the balance in the amount of $18,483.86 was remitted to Enabnit who deposited it in

his firm trust account. Enabnit then wrote a trust account check in the same amount to the bank on behalf of the Kraayenbrinks. The record is unclear just why the payments from the Emersons were passed through the office of the clerk of the district court to Enabnit. On oral argument counsel were able to explain only that it was done in accordance with local practice.

A second check in the amount of $20,000 was made payable by the Emersons to the clerk of court on July 16, 1985. The clerk endorsed the check over to the Kraayenbrinks and sent it to Enabnit as their counsel. The check was again processed through Enabnit's trust account, but this time he deducted an attorney's fee pursuant to a claimed attorney's lien. He remitted the balance ($7881) to the bank.

On November 4, 1985, the Emersons issued a third check in the amount of $34,-433.21 to the clerk. The clerk again endorsed the check to Enabnit who deposited it in his firm trust account where it remained until December 23, 1985.

The manner in which Enabnit processed the third check was at obvious variance with the manner in which he processed the first two. This suit concerns the ramifications of the variance. From the foregoing it is readily apparent that Enabnit attended the processing of the first check and, to some extent the second one, in accordance with the obligations of his clients under their agreement with the bank.

Enabnit had no attorney-client relationship with the bank; all parties were at all times represented by independent counsel and the bank's interests were clearly adverse to those of Enabnit's clients. The bank nevertheless felt it could look to Enabnit to process the last check in accordance with his client's contract.

On December 23, 1985, at Henry and Betty Kraayenbrink's direction, Enabnit placed the funds in a money market account at Pioneer Savings & Loan Association (Pioneer) in the name of Henry Kraayenbrink and Betty Kraayenbrink, as tenants in common. The certificate expressly stated that both signatures of Henry and Betty were required to withdraw any funds

from the account. The Kraayenbrinks by then were involved in a hotly contested dissolution of marriage action in which they were each represented by other counsel. Enabnit was not named on the certificate, nor was the bank. The bank was not aware that these funds had been placed in the money market account nor was it informed that the check had been received by Enabnit. Enabnit testified the money was not directly paid over to the bank upon an instruction from his client, Henry Kraayenbrink. The dissolution of marriage action may have prompted this directive by Henry. It also seems that Henry was disputing the balance due to the bank, but Enabnit did not inform the bank of this fact.

On January 21, 1986, acting alone, Henry requested Pioneer to transfer all account funds to him in Arizona. In response, Pioneer issued a check in the amount of $33,-465.41 payable to Henry and Betty Kraayenbrink, closing the account. Henry endorsed the draft with his name, forged the name of his wife, and converted the funds to his own use.

After repeated requests from the bank's attorney, Enabnit reported he was holding the full amount of the third check in an account accruing interest. He told the bank's counsel the funds would be surrendered once the Kraayenbrinks released a malpractice claim against another attorney who, it was alleged, precipitated much of the difficulty by negligently drafting the contract between the Kraayenbrinks and the Emersons. That malpractice claim was to recover Enabnit's fee which had been deducted from the second payment. It was eventually settled for $7500, which was paid to the bank.

The president of the bank thereafter met with Henry in Arizona, without Enabnit's knowledge. Henry and the bank president negotiated and executed a "release statement" which recites in part as follows:

American State Bank ... in consideration of Henry M. Kraayenbrink, signing the release forms to release the funds now in escrow and release claim check number 874604 in the amount of $7500 to American State Bank, does hereby re-

lease Henry M. Kraayenbrink from all notes, obligations, and properties due and owing American State Bank.

At that time the bank of course expected to receive both the $7500 and the $34,-433.21. It received only the $7500 however because, unbeknownst to the bank, Henry had already withdrawn the other funds from the money market account.

The bank brought this suit for the balance against Enabnit on theories of negligence and breach of contract. It explains that it is not a legal malpractice suit; liability turns on whether Enabnit assumed a duty to the bank by three times placing the funds in his trust account and at first conforming to his client's contractual obligations.

█ I. The bank's abnegation of a malpractice claim is wise. Legal malpractice liability does not extend to a complete stranger to the attorney-client relationship. Lawyer liability to anyone but a client is extremely rare, though it sometimes exists pursuant to a third-party beneficiary theory. For such liability to exist it must appear that the client intended to benefit the third party in the transaction. *Brody v. Ruby*, 267 N.W.2d 902, 906–07 (Iowa 1978).

█ The Kraayenbrinks had no expectation to benefit the bank as a third party here. The bank's interests were adverse to theirs. This was made even more apparent by the fact that both were served by independent counsel.

█ II. The bank's common-law tort theory comes a good deal closer. The bank insists that Enabnit owed it a duty to act as escrow agent after undertaking to do so, "gratuitously or otherwise." As authority for the claim the bank relies on the Restatement (Second) of Torts section 323 (1965). That section provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

We have applied Restatement section 323, or cited it with approval, a number of times. *DeBurkarte v. Louvar*, 393 N.W.2d 131, 135, 140–41 (Iowa 1986); *Van Iperen v. Van Bramer*, 392 N.W.2d 480, 485 (Iowa 1986); *Wilson v. Nepstad*, 282 N.W.2d 664, 673 n. 1 (Iowa 1979).

Even assuming that the harm of which the bank complains is "physical harm," Restatement section 323 has no application here. It does not apply for the same reason legal malpractice does not apply: there was no undertaking of the services for the bank by Enabnit. Enabnit's undertaking was for his clients, not for the bank. There was nothing in the original stipulation, or in Enabnit's performance upon receipt of the first two payments, which would indicate the bank's interests and those of the Kraayenbrinks were less than adverse. At all times Enabnit dealt in the matter with the bank through its own attorney.

The stipulation required the Kraayenbrinks, not their attorney, to make the payments. There is certainly no hint that the funds came into Enabnit's hands by virtue of any direction by the bank. We have long held that "[a] deposit by one party alone, without the agreement of all parties to the instrument, will not constitute the instrument an escrow." *Tutt v. Smith*, 201 Iowa 107, 112, 204 N.W. 294, 296 (1925); *see also Bolte v. Schenk*, 205 Iowa 834, 841, 210 N.W. 797, 800 (1926); 30A C.J.S. *Escrows* § 2, at 969 (1965) (the escrow agreement must be clear and definite).

The bank's theory is that a duty arose by Enabnit's course of conduct. It is true that "[t]he existence of a valid escrow made by oral agreement may, in part at least, be shown by circumstances and conduct indicating the intention of the parties." 28 Am.Jur.2d *Escrow* § 5, at 9–10 (1966). But under the facts here any duty would plainly have to be traced to Enabnit's conduct

alone. The stipulation between the bank and the Kraayenbrinks did not in any way render Enabnit responsible to the bank for payments the Kraayenbrinks received from the Emersons. As the trial court found, Enabnit never gave the bank any personal assurance of payments.

Finally, the record simply does not bear out the bank's claim that Enabnit treated both the first two Emerson payments as an escrow agent would. Although we are certainly disinclined to commend Enabnit in all ways for his conduct, he did not automatically surrender the proceeds of the second check to the bank. Rather he treated the payment as property of his clients and seized more than half of that payment for a fee the Kraayenbrinks owed him. To be sure, the bank did not endorse the seizure or agree to it. But the facts fall short of showing the course of conduct claimed by the bank.

Because of our enormous pride in the profession we feel considerable discomfort when a misunderstanding arises over the handling of funds by an attorney. The bank places much reliance on the fact that the funds here were placed in Enabnit's firm trust account, and we readily agree that public confidence is especially sensitive to a lawyer's trust account.

We regret that the bank believes it has been misled by an attorney upon whom it felt entitled to rely. It is nevertheless necessary to hold that the bank was not entitled, under these facts, to recover by reason of that reliance.

It sometimes happens that attorneys participate in the settlement of litigation by agreeing to receive and transfer funds in accordance with the settlement. An attorney who agrees to act as an escrow agent can of course be made to perform as one, even where opposing litigants are represented by separate counsel. Enabnit made no such agreement, however, and took possession of the funds after settlement had been reached. The bank did not change its position in reliance on Enabnit's possession of the funds. The bank is thus reduced to attempting to fix Enabnit with the responsibility for his clients' contractual obligations because the funds passed through his hands. Although the clients were bound under their contract to pay the funds to the bank, Enabnit was not. When, for reasons of their own, the clients demanded the funds, Enabnit did not become liable to the bank for complying with the demand.

By our holding we do not put our stamp of approval on Enabnit's conduct. The record shows he was badly misled by the duplicity of Henry Kraayenbrink. He may have sincerely believed the bank's rights to the fund would be sufficiently protected through the requirement of Betty Kraayenbrink's signature when the funds were withdrawn from the money market account. Even so, we like to think Enabnit would extend every effort to superintend the professional relationship in such a way as to protect the interest of his clients without damaging those of others who, even without justification, might rely on him. The trial court was nevertheless correct in concluding that Enabnit is not liable to the bank for having failed to do so.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.