MARY FENLON, APPELLEE, v. ANN FENLON, APPELLEE; ANGELA ROCK, APPELLANT.

FILED FEBRUARY 13, 1914. No. 18,337.

1. **Adoption: CONTRACT: CONSTRUCTION.** A contract by husband and wife to take an infant child into their family and provide for it is to be construed like other written contracts to ascertain the meaning and intention of the parties thereto, and if the parties so taking such child by the terms of their contract reserve the right to determine, when the child becomes of legal age, whether they will make such child their heir or will provide for her as specified in the contract, and one of them dies before the child becomes of age without taking any further action to make the child his heir, such child will not inherit as the heir of the deceased.

2. ———: ———: ———. This case, by the pleadings and trial below, and by the briefs of the parties, is made to depend upon the meaning and intention of the parties as expressed in the contract. set out in the opinion by which the plaintiff and her husband took the defendant Angela Rock into their family, and that contract is construed to mean that the plaintiff and her husband have the option to determine, when the child becomes of age, either to make her their heir or to provide for her as expressed in the first article of their agreement.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*W. H. Kelligar* and *Edgar Ferneau,* for appellant.

*Reavis & Reavis, contra.*

SEDGWICK, J.

In July, 1911, the plaintiff and her husband, John Fenlon, since deceased, entered into a contract with the New York Foundling Hospital, under which they took the care, custody and control of the defendant, Angela Rock, a female child then of the age of a little less than three years. They had no children of their own, and this child was a member of their family until the death of the said John Fenlon, which occurred about seven months thereafter, and the child has since been, and now is, in the care and custody of the plaintiff, Mary Fenlon. The defendant Ann Fenlon claimed the right to inherit the one-half interest in the property of John Fenlon, deceased, as his sister and only heir. The plaintiff was duly appointed administratrix of the estate of John Fenlon, deceased, and applied to the district court for Richardson county to have the rights and interests of all parties in the real estate of the intestate determined by the court, and for a partition of the real estate; it being conceded that as widow of the deceased she took one-half interest therein. The plaintiff attached to her petition a copy of the contract under which she and her husband had taken the child into their family, and the question that she desired to have determined was whether under that contract the child was entitled to inherit the one-half interest in the real estate, or the sister of the deceased was so entitled. The court appointed a guardian *ad litem* for the child, who, by way of answer and cross-petition, alleged that the contract attached to plaintiff's petition "is a true and correct copy of the contract between the New York Foundling Hospital and John Fenlon and Mary Fenlon, his wife," and made that contract a part of his answer

and cross-petition, and alleged that under the contract the child was entitled to inherit as the heir of John Fenlon, deceased, and asked the court to construe the contract. The defendant, Ann Fenlon, also answered, and alleged "that, as the surviving sister of the said John Fenlon, she is entitled to inherit and is the owner of an undivided one-half interest in fee simple in said real estate." The defendant, Ann Fenlon, demurred to the answer of the guardian *ad litem*, "because, by the terms of the said written contract between the said New York Foundling Hospital and the said John Fenlon and Mary Fenlon, it is still executory, and therefore is not the subject for judicial action in this case looking to its specific performance; that said contract was so executory and incomplete at the time of the death of John Fenlon, one of the contracting parties named therein, and, being an incomplete contract, it is not susceptible of being enforced by a proceeding for its specific performance, and therefore no right whatever thereunder had accrued to the said Angela Rock, and the answer and cross-petition of the guardian *ad litem* of said Angela Rock should be dismissed." The court sustained this demurrer, and found that the defendant Ann Fenlon was entitled to a one-half interest in the real estate, and appointed a referee to partition the same, and, if partition could not be had without injury to the property, to advertise and sell the same. The referee reported that the real estate could not be equitably divided between the parties, and that he had advertised and sold the real estate to the plaintiff, Mary Fenlon, for $11,200. This sale was confirmed by the court and a deed ordered made to the purchaser. The guardian *ad litem* for the minor child has appealed to this court.

By the record made as above stated, and by the briefs and arguments of counsel, the decision in this case is made to depend wholly upon the construction of the said contract, and it is conceded that this contract, like other contracts, is to be construed so as to ascertain the real intention and meaning of the parties thereto, as disclosed by the contract itself. The contract is as follows:

"This indenture, made this 11th day of July, in the year of our Lord one thousand nine hundred and eleven, between the New York Foundling Hospital, a corporation incorporated and organized under the laws of the state of New York, party of the first part, and John Fenlon and Mary, his wife, of Dawson, state of Nebr., parties of the second part; whereas, Angela Rock, female child, now of the age of two years and ten months, was heretofore, pursuant to the provisions of the charter of the aforesaid corporation, received and taken, and now is under its care and custody, and has now, in the judgment of its board of managers, arrived at a suitable age for the said corporation to indenture; now, therefore, this indenture witnesseth, that the said party of the first part, in and by virtue of the power and authority conferred upon and possessed by it, under and by chapter three hundred and nineteen of the laws of the state of New York for the year 1848, chapter six hundred and thirty-five of the laws of the said state for the year 1872, and chapter nineteen of the laws of said state for the year 1909, being chapter fourteen of the Consolidated Laws known as the Domestic Relations Law, do hereby put, place and indenture the said Angela Rock unto the said parties of the second part, as their own child in every respect, until the said Angela Rock shall arrive at her legal majority, to live with, and be employed by the said parties of the second part in and about their house and household, and the affairs thereof, and to be instructed therein, and also as hereinafter specified, during all of which time the said female child shall reside with and obey said parties of the second part, and according to her power, will and ability shall honestly, orderly and obediently in all things demean and behave herself toward the parties of the second part.

"The parties of the second part agree as follows:

"1.   That during all the time aforesaid they will provide said Angela Rock with suitable and proper board, lodging and medical attendance, and all things necessary and fit for any indentured child, and in all respects similar to what would ordinarily be provided and allowed by the said

parties of the second part, or one in their station of life, for their own child or children. If the said child is returned to the party of the first part when she shall reach her legal majority, then the parties of the second part will give to said child a new Bible, a complete suit of new clothes, together with all those she shall then have in use, and an outfit of at least the same as their own child.

"2. That the said parties of the second part will teach and instruct, or cause to be taught or instructed, said child in all branches of education ordinarily taught to the children of persons in the station of life of the said parties of the second part, such being the ordinary branches of school education and such as are required by law, including reading, writing and general rules of arithmetic, and will bring her up in a moral and correct manner, and in the Catholic faith, and cause and procure said child to behave herself in all things as all minor children should demean themselves during their minority, and generally that said child shall be maintained, clothed, educated, treated with like care and tenderness as if she were in fact the child of the parties of the second part, and will provide for said child, financially and in every other way, as if the said child were adopted by the said parties of the second part under the laws of the state of New York.

"3. That the said parties of the second part will not, nor will their legal representatives or assigns, assign or transfer this indenture to any other person without the consent in writing of the party of the first part.

"4. That the said parties of the second part will, at least once in every six months during the said term, report in writing to the board of managers of the said party of the first part, or the treasurer thereof, the conduct or behavior of said child, and whether said child is still living under the care of the parties of the second part, and, if not, where and with whom said child is living, and will in such case further state why said child is not then living with them and under their care and protection; but neither such report nor its receipt or acceptance by the party of the first part shall be deemed a consent to an

assignment of this indenture or a waiver of any forfeiture thereof.

"5. That the officers and managers of the said party of the first part may from time to time visit and see said child, and ascertain to their own satisfaction whether said parties of the second part are fully carrying out and performing all the conditions of this indenture, and whether said child is in all respects properly cared for.

"6. And it is further provided that this present indenture shall not be construed to render the said party of the first part responsible in damages for any cause whatever, but shall operate only as the full exercise of the powers conferred by its charter or act of incorporation for the purpose herein expressed.

"7. And it is hereby mutually agreed by and between the parties hereto that in case of any breach by said parties of the second part of the stipulations, agreements or covenants herein contained, set forth and implied, then this indenture, and each and every part thereof, shall, at the option of the said party of the first part be null and void, and that the waiver of one breach of forfeiture shall not operate as a general waiver, but only and exclusively of the breach of forfeiture thus waived.

"8. And the parties of the second part further agree, that if the said child be not returned to the party of the first part when she attains her legal majority, or shall not have been so returned before she shall have attained such age, and this agreement of indenture be duly canceled and annulled by the consent of both parties, or if said child be not legally adopted by said parties of the second part before said child attain such age, then the parties of the second part, in consideration of this indenture, and being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that, if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the parties

die seised and possessed, as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and that, if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision, or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part.

"In witness whereof the said party of the first part has hereunto caused its corporate seal to be affixed and this indenture to be signed by its treasurer, and the said parties of the second part have hereunto set their hand and seal, the day and year first above written."

By the first article of the contract on the part of the Fenlons they agree to do the things therein specified for the child until she should become of legal age, and that, if she was returned to the hospital when she became of legal age, they would then furnish her with the things therein specified. This provision of the contract would of course by itself be construed to give them the option, when the child became of legal age, to return her and furnish those things which they agreed to furnish on such contingency, or to make her their heir, as they saw fit. The difficulty in the case is to determine whether there are other provisions in the contract which modify this one, so that upon the whole contract they did not reserve the right to elect, when she became of age, whether they would make the child their heir or would furnish her as provided in this first article.

By the seventh article the hospital authorities reserved the right at their option to declare the contract null and void in case it was not performed by the Fenlons according to its terms, but this article is entirely indefinite as to what should be the liability of the Fenlons in such case.

It is insisted that by the eighth article the Fenlons agreed to "keep Angela Rock as their own child until she

attained her majority, and, if either should die with this contract in full force and effect, Angela Rock should receive a child's share of the estate of the deceased party, whether such party died testate or intestate." In construing this eighth article, we should consider whether the clause, "and this agreement of indenture be duly canceled and annulled by the consent of both parties," limits all that preceded it in the article, or limits only the nearest clause, "or shall not have been so returned before she shall have attained such age." By the ordinary rules of construction, when two clauses are connected by the conjunction "or" and are followed by a modifying clause, the modifying clause is considered as limiting only the one to which it nearest stands. If this rule is followed here, there is no limitation in this article upon the right of the Fenlons to return the child when she becomes of legal age.

This article eight contains the only direct agreement on the part of the Fenlons that the child shall inherit their property, and we must determine whether their intention was that, if they died intestate while the child was a member of their family and this contract was in full force, and they had not legally adopted the child, she should inherit their property as an heir. What is the force and effect of the clause, "or if said child be not legally adopted by said parties of the second part before said child attain such age?" If the child was legally adopted, that of itself would ordinarily entitle her to inherit. If this clause is construed as an independent clause, and to entitle her to inherit if she is not legally adopted, then it is equivalent to an agreement that at all events she shall be entitled to inherit. This could not have been the intention of the parties. If the conjunction "and" was intended instead of the conjunction "or," then the construction is that, if the child shall not have been returned before she arrived at the legal age and the agreement of indenture duly canceled and annulled by the consent of both parties, *and* the child is not legally adopted, then they "shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child." If we

adopt this construction, then we must consider the force
of the following clause:. "And the parties of the second
part further agree that, if the parties of the second part
shall die intestate, said child shall inherit." If this clause
is construed literally by itself, it is an absolute agreement
that if they "die intestate" the child shall inherit. Of
course this could not have been the intention of the parties.
If they had surrendered the child to the authorities of the
hospital with the consent of those authorities, or if the
contract had been annulled by the authorities under the
seventh article, or if it had been transferred with the con-
sent of the authorities under the third article, the child
could not inherit, though both Mr. and Mrs. Fenlon should
die intestate. The only possible construction to be given
to this clause of the contract under the other provisions
is to read it in connection with the immediately preceding
clause. They agree that under the conditions named they
will be "deemed to have elected to keep, treat and main-
tain said child as if it were their own natural and legiti-
mate child, and (in such case) the parties of the second
part further agree" that the child shall inherit.

We think that in the light of the whole contract this
eighth article should be construed as though it read:
"And the parties of the second part further agree that if
the said child be not returned to the party of the first part
when she attains her legal majority, or shall not have
been so returned before she shall have attained such age,
and this agreement of indenture be duly canceled and an-
nulled by the consent of both parties, and said child be
not legally adopted by said parties of the second part be-
fore said child attain such age, then the parties of the
second part, in consideration of this indenture, and being
permitted by the party of the first part to keep such child,
shall be deemed to have elected to keep, treat and maintain
said child as if it were their own natural and legitimate
child, and in such case the parties of the second part
further agree that, if the parties of second part shall
die intestate, said child shall inherit and succeed to such
share of the property, real and personal, of which the

parties die seized and possessed, as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part."

It follows that there is no limitation in this contract upon the right of Mr. and Mrs. Fenlon to elect, when the child becomes of age, whether they will make her their heir or provide for her as agreed in the first article of their contract. This being the case, this child would not become their heir until the parties upon her becoming of age elected to make her such.

The judgment of the district court is therefore right, and is

AFFIRMED.

ROSE, J., not sitting.