[File No. 6595.]

NICK KLEIN, Respondent, v. PETER KLEIN, as the Executor of the Estate of Katherine Klein, Deceased, Paul Klein, Perpetua Stolz and Peter Klein, Appellants.

(286 N. W. 898.)

Opinion filed June 28, 1939.   Rehearing denied July 17, 1939.

*J. K. Murray,* for appellants.

*T. F. Murtha* and *C. H. Starke,* for respondent.

MORRIS, J. This is an action in equity in the nature of specific performance in which the plaintiff seeks a decree declaring him to be entitled to an undivided one-fourth interest in the estate of Katherine Klein, deceased. The plaintiff bases his claim upon an indenture made in 1924 between the deceased and the New York Foundling Hospital. The plaintiff was born in New York December 25, 1913. He was brought to North Dakota by the Foundling Hospital in 1922. A short time later he was turned over to Mrs. Klein, who was a widow residing with her family and three children upon a farm near Dickinson, North Dakota. The plaintiff was then about nine years old. The indenture provided that Katherine Klein should furnish the plaintiff with proper board, lodging, medical attention, schooling, religious training in the Catholic Faith, and surroundings and care usually provided for children of families of her station in life. It also provided that the plaintiff should live with and obey Mrs. Klein and demean himself as her child. The parts of the indenture that most directly bear upon this controversy, read as follows:

"If the said child is returned to the party of the first part when he shall become Twenty-one years of age, then the party of the second part will give to said child a new Bible, a complete suit of new clothes, together with all those he shall then have in use, and an outfit of at least the same in every respect as their own child."

"And the party of the second part further agrees, that if said child be not returned to the party of the first part when he attains the age of Twenty-one years, or shall not have been so returned before he shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of both parties, or if said child be not legally adopted by said party of the second part before said child attain such age, then the party of the second part, in consideration of this Indenture and of being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were her own natural and legitimate child. And the party of the second part further agrees that, if the party of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the party dies seized and possessed as would have descended or would have been distributed to said child if he had been the natural and legitimate child of the part of the second part; and that if the party of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as he would have received if said testator had died intestate and said child had been the natural and legitimate child of the party of the second part."

The defendants, the natural children of Mrs. Klein, one of whom is the executor of her estate, appeal from the judgment of the court decreeing to the plaintiff a one-fourth interest in the estate of the deceased. The decision of the controversy requires the consideration of the following additional facts. Mrs. Klein substantially complied with the conditions which the indenture imposed upon her. The plaintiff, however, became involved with the law on several occasions. He was addicted to thievery and stole sums of money on various occasions. These crimes finally resulted in his being committed by the Juvenile Court to the State Training School in November, 1928, for four and

358

a half years. He was then sixteen years of age. The Klein family visited him at the school and on several occasions Mrs. Klein took him home for vacations. He was paroled to her in June, 1933. She took him to her home where he remained for some time and was given care and spending money. He did odd jobs about her farm and also worked out for about four months. In June, 1934, she consented to his enlistment in the army. He entered the army, served for two years, and never returned to live at the Klein home. He attained majority December 25, 1934. Mrs. Klein never adopted the plaintiff. She died October 14, 1937. About ten days prior to her death she made a will wherein she bequeathed the plaintiff $150. Most of her estate, amounting to about $10,000, was left to her natural children. The plaintiff has been paid the sum bequeathed to him. At the time he accepted the bequest he did not know about the indenture. He has not tendered back the amount of the bequest. At the time of the trial he was unable to make such tender for lack of funds. However, in his reply to defendants' answer he offers to deduct the amount of the bequest from the amount which he claims he is entitled to recover from the estate.

The appellants press two contentions. First, that the indenture was terminated prior to Mrs. Klein's death and never revived, and second, that the plaintiff, by his conduct in accepting and retaining the bequest provided for in the will, is estopped from asserting further claim to any portion of Mrs. Klein's estate. The contention that the indenture was terminated rests chiefly upon two letters and the testimony of Reverend Father Aberle, who has been the parish priest for some twenty years. While the plaintiff's case was before the Juvenile Court Father Aberle wrote to the Sisters of Charity in charge of the Foundling Hospital as follows:

"Some years ago Nick Klein from your institution was placed in the care of Mrs. Catherine Klein of this city. At that time Mrs. C. Klein lived on the farm six miles south of the city, since then however she has moved to town. Nick Klein was a hard child to manage from the very beginning, and has become unmanageable in the course of the years.

"From what I understand your representative, who visited here last year, was requested by Mrs. C. Klein to take this Nick Klein back or find another home for him. The lady begged Mrs. C. Klein to try and

keep him for another year. And this last year was an entire failure for the boy.

"Last fall Nick Klein was in the hands of the Juvenile Court and in the County Jail for a time for stealing. During the winter months he attended our parochial school, but could not be kept to the end of the school year, as nothing was safe from him; and he went so far as to plunder the poor box and candle stand in the church on several occasions. I caught him several times, punished him, talked to him kindly, tried everything possible, but of no avail.

"This summer he got again into the hands of the law for stealing in town. His case is still pending in the Juvenile Court, by which Court I was requested to notify you to take him back as soon as is possible, otherwise the court will send him to the State Training School."

The plaintiff contends that this letter was written at the instance of the Juvenile Court and that it does not amount to a request on the part of Mrs. Klein to have the plaintiff returned to the Foundling Hospital. The letter not only indicates that the court requested that the hospital be notified to take the plaintiff back, but it also recites that Mrs. Klein had previously requested a representative of the Foundling Hospital to take the plaintiff back or find another home for him, and that a representative of the hospital persuaded her to try him for another year. Father Aberle identified the letter as being written by him and specifically stated that he wrote it at the request of Mrs. Klein. His testimony is not inconsistent with the recitals in the letter. The Juvenile Court had before it an incorrigible boy who had been under Mrs. Klein's care. The fact that the Juvenile Court may have requested that the Foundling Hospital be notified to take the boy back in no way indicates that Mrs. Klein did not also make the same request. When we read the letter in connection with Father Aberle's testimony, we conclude that it was written at the request of Mrs. Klein as well as that of the court.

Father Aberle's letter was answered by the Sisters of Charity as follows:

"We received your letter about Nick Klein and I cannot tell you how badly we feel that he has turned out so unsatisfactorily.

"I do not know when we will have an Agent in North Dakota. If you think well of it, perhaps the Court would send him to the State

Training School, and then the first time we have someone in the State, we would take him. It seems to me that this is the best solution. I would not want him to travel to New York alone."

This letter cannot be construed other than an agreement on the part of those in charge of the Foundling Hospital to take the plaintiff. It is argued in behalf of the plaintiff that the agreement was never carried out; that the plaintiff was never taken back and consequently the indenture was not terminated. In that part of the indenture which we have heretofore quoted, certain things were required to be given to him if he was returned to the Foundling Hospital when he became twenty-one. However, at the time this correspondence took place, the plaintiff was about sixteen years of age. He had not conducted himself in a manner prescribed by the indenture. He had not become entitled to the clothes and the Bible specified, nor had he reached the age of twenty-one years. Under the circumstances that then existed Mrs. Klein was amply justified in terminating the indenture and returning the plaintiff to the agency from whence he had come. That agency, in its letter, did not want him to be sent alone to New York but requested that he be sent to the Training School until he should be called for. Construing the two letters together we think it is shown that Mrs. Klein requested his return and that the Foundling Hospital agreed to take him back. This constituted a termination of the indenture. Nothing further was required to be done on Mrs. Klein's part. She requested that he be taken back and the Foundling Hospital agreed to take him.

It is further urged by the plaintiff that even though the correspondence be given the construction which we have placed upon it, that Mrs. Klein, by her subsequent conduct, waived termination of the indenture and reinstated it. The record discloses no correspondence between her and the Home subsequent to the letter by Father Aberle. Father Aberle, however, testified that Mrs. Klein always expected an agent from the hospital to come and get the plaintiff; even up to June, 1934, after he had been paroled to her and shortly prior to his enlistment in the army. It is to the credit of the Klein family that they continued to show an interest in the plaintiff while he was in the Training School and after he was released on parole to Mrs. Klein. Interest on the part of Mrs. Klein does not establish an intention on her part to rein-

state the indenture and to bind herself in the disposition of her property so as to permit the plaintiff a share therein despite his persistent misconduct and the agreement and obligation on the part of the Foundling Hospital to relieve her of the responsibility of his care. On the other hand, the very fact that she made her will in total disregard of the terms of the indenture is at least some indication that she did not consider herself bound by it. Her conduct toward the plaintiff subsequent to his incarceration discloses that she still maintained sufficient interest in the plaintiff so that when the Foundling Hospital failed to call for him as it had agreed to do, she did not permit him to become an outcast, wholly friendless and neglected. Her conduct reveals that she possessed commendable humanitarian instincts, but is not sufficient to establish a waiver of the termination of the contract on her part and re-establish it as binding upon her and her estate. In view of the circumstances we deem her conduct to be wholly insufficient to bring about such a result. The indenture under which the plaintiff seeks a part of the estate is a contract between two parties for the benefit of a third. It is a contract between Mrs. Klein and the Foundling Hospital for the benefit of the plaintiff.

This court has approved the doctrine that a court of equity will enforce an agreement to devise property after the death of the promisor as against heirs, devisees, and personal representatives of the deceased. Torgerson v. Hauge, 34 N. D. 646, 159 N. W. 6, 3 A.L.R. 164. Section 5841, N. D. Compiled Laws 1913, provides: "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." Such a contract may be enforced in a court of equity in a proper case. Williston, Contracts, Rev. ed. § 358. In State Bank v. Schultze, 51 N. D. 66, 199 N. W. 138, it is held that under § 5841, N. D. Compiled Laws 1913, a third person, for whose benefit a contract is made, may enforce it at any time before the parties thereto rescind it. A third person for whose benefit a contract has been made cannot recover thereon if before he accepts the contract the parties thereto have rescinded or terminated it. International Trust Co. v. Keefe Mfg. & Invest. Co. 40 Colo. 440, 91 P. 915, 18 L.R.A.(N.S.) 455. After a rescission by the parties, the third person for whose benefit the contract is made can

no longer enforce it. Plott v. Kittleson, 58 N. D. 881, 228 N. W. 217; 68 C. J. 581.

It is not claimed that Mrs. Klein had a right to rescind the contract because of fraud or mistake. She did, however, have a right to terminate it upon the conditions therein specified. Furthermore, the parties to the contract could rescind it by their mutual agreement. Under the evidence heretofore reviewed we hold that the contract was terminated by mutual agreement of the parties who made it. It was never revived. The contract having been terminated, the plaintiff can assert no rights under it. There being no existing contract under which the plaintiff may claim any rights in the estate of Mrs. Klein, it is unnecessary to consider the matter of estoppel.

Reversed.

Nuessle, Ch. J., and Christianson, Burr, and Burke, JJ., concur.

Morris, J. (on petition for rehearing). The plaintiff has filed a petition for rehearing wherein he urges that the court has overlooked the last sentence of the letter written by the New York Foundling Hospital to Father Aberle from which we have quoted at length in the opinion. The sentence reads, "I would be very glad to know what you think of the matter." We have not overlooked consideration of this sentence. It detracts nothing from that portion of the letter which we have quoted and which clearly shows that the hospital agreed to take the plaintiff back. It is apparent from the entire letter, including the last sentence, that the only question in the minds of the hospital authorities was as to when and how they should get the plaintiff back to New York. It is noticeable that they did not suggest that anything further be done by Mrs. Klein. The writer of the letter suggested that the plaintiff be sent to the State Training School and that an agent of the hospital would call for him later. The other alternative was to send him to New York. There is no implication in the letter that the hospital sought to avoid becoming responsible for the boy. The last sentence indicates that the hospital authorities sought Father Aberle's advice as to how they should carry out their responsibility, that is, what

should be done with the plaintiff pending the call of the hospital agent. It has no bearing upon the rescission of the contract. Rehearing denied.

NUESSLE, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.