Mary FISH, Plaintiff and Respondent,

v.

Mary BERZEL; and Mary Berzel, as Executrix of Estate and Last Will and Testament of George Berzel, deceased, Defendant and Appellant.

No. 7858.

Supreme Court of North Dakota.

Feb. 17, 1960.

Baird & Baird and Reichert & Reichert, Dickinson, N. D., for defendant and appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, N. D., for plaintiff and respondent.

MORRIS, Judge.

This action is primarily for the specific performance of a contract termed an indenture entered into on March 24, 1917 between the New York Foundling Hospital, a corporation, party of the first part, and George Berzel and Mary Berzel, his wife, parties of the second part, with respect to the care, custody, adoption and rights of inheritance of Mary Speidel, an infant female child then of the age of 4 years and 3 months.

The Foundling Hospital agreed to: "place and indenture the said Mary Speidel unto the said parties of the second part, as their own child in every respect until the said Mary Speidel shall arrive at the age of eighteen years, to live with, and be employed by

the said parties of the second part in and about their house and household, and the affairs thereof, and to be instructed therein, and also as hereinafter specified, during all of which time the said female child shall reside with and obey said parties of the second part, and according to her power, will and ability shall honestly orderly and obediently in all things demean and behave herself toward the parties of the second part."

The Berzels agreed to provide suitable board, lodging, medical attendance and necessaries for the child similar to those ordinarily provided by parties in their station of life for their own children. They also agreed that:

"If said child is returned to the party of the first part when she shall reach the age of Eighteen years, then the parties of the second part will give to said child a new Bible, a complete suit of new clothes, together with all those she shall then have in use, and an outfit of at least the same in every respect as their own child."

They also agreed to educate her and bring her up in the Catholic faith.

The plaintiff bases her right to relief in this action upon the provisions of Section VIII of the indenture which is as follows:

"VIII. And the parties of the second part further agree, that, if said child be not returned to the party of the first part when she attains the age of Eighteen years, or shall not have been so returned before she shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of both parties, or if said child be not legally adopted by said parties of the second part before said child attain such age, then the parties of the second part, in consideration of this Indenture and of being permitted by the party of the first part to keep such child, shall be deemed

to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that, if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and that if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part."

George Berzel died on July 7, 1956 leaving a will wherein he bequeathed one-third of the residue of his estate to Mary Fish, who was formerly known as Mary Speidel, the plaintiff in this action, and two-thirds of the residue to his widow, Mary Berzel, the defendant, and executrix under his will. The bequest to Mary Fish is as follows:

"b. To my daughter (though not legally adopted by me, I have always and do consider Mary Fish as my daughter and wish her to share as a legally adopted daughter) Mary Fish, one-third (⅓) of all of the rest of my property, real, personal and mixed, to have and to hold, Forever."

The probate of the estate proceeded to the point where a final account and report of the executrix was allowed and a final decree entered. Mary Fish, plaintiff herein, appealed from the order and final decree to the district court, where her contentions were upheld. The appeal in this action

is taken from a judgment of the district court determining that the plaintiff is entitled to one-half of the estate under the contract less a share of the costs of administration and in effect directing specific performance.

Section 56–0104, NDRC 1943 provides that if a decedent leaves a surviving husband or wife and only one child, or the lawful issue thereof, in the absence of a disposition by will the estate must be distributed in equal shares to the surviving husband or wife and child or the lawful issue of such child. The plaintiff contends that by virtue of the contract and despite the failure of the Berzels to adopt her she is entitled to receive one-half of the estate of George Berzel notwithstanding the provision of the will bequeathing to her one-third of the residue of the estate. The defendant concedes the validity of the contract and plaintiff's interpretation of its provisions and states the issues on this appeal to be:

I. Whether or not the plaintiff by her course of conduct during the years she resided with George and Mary Berzel breached the terms of the indenture contract so that she is no longer entitled to recover under its terms.

II. Whether or not said Mary Fish by her conduct during the probate of the estate elected to receive under the terms of the will rather than under the terms of the indenture contract and is now, therefore, estopped from claiming thereunder.

The plaintiff agrees that these are the issues. Assuming that the conduct of a child might under certain circumstances amount to a failure of consideration of a contract for adoption when a timely assertion of such failure is made, it is clear that neither the facts nor the law sustains the defendant's position in this case. She bases her contention as to misconduct on the part of the child on these incidents: The plaintiff freely admits that when she was in the seventh and eighth grades she stole a number of items from a small variety store operated by the Berzels and gave them to her schoolmates. Apparently Mrs. Berzel complained to the school authorities who made the other children surrender these items and they were turned over to Mrs. Berzel. It also appears that the plaintiff was sassy and that Mrs. Berzel sent her to Father Aberle, the head of the school, for lectures. It seems that the plaintiff and defendant did not get along well together. On the other hand there is no intimation in the record of any friction between the plaintiff and George Berzel.

When the plaintiff was sixteen years of age she ran away from home and found employment in reputable department stores in Minneapolis. George Berzel located her after two or three months and persuaded her to return to the Berzel home where she remained until she was over 19 years of age. She then went to California where she married a former employee of George Berzel. There is no evidence of any difficulty between the plaintiff and the Berzels after her return from Minneapolis.

■ The Berzels did not return the plaintiff to the Foundling Home before or when she became 18 years of age as they clearly had the right to do under the contract. Their retention of the plaintiff as their child amounted to an election on the part of the Berzels that she should succeed to their estate according to the laws of succession.

■ The same type of agreement that we are here considering was before the Court of Chancery of New Jersey in DiGirolamo v. DiMatteo, 108 N.J.Eq. 592, 156 A. 24, 26. While that case differs from this in that the child was adopted, this observation of the court is pertinent:

"It seems also clear that what the parties intended, and that the true interpretation and meaning of paragraph VIII is, that, unless the 'custodians'

should elect to return the child to the hospital at or before she attained eighteen years of age, then the child should inherit or succeed to the share of the estate, as specified.

"The provision that she shall so inherit or succeed to is not in any wise made conditional upon her not having been adopted, either by evident intendment or by express technical phraseology. The actual expression is that, 'if the child is not returned when she attains 18' (or has not been previously returned or adopted), the custodians shall be deemed to have elected to keep her as their own child.

"The effect of the adoption is that they made that election earlier. And the meaning of the second sentence of paragraph VIII is that, if they elect to keep her as their own child—whether by adoption or failure to return—she shall inherit or succeed to the share of the .estate.

"It follows that complainant is entitled to decree that defendant pay over to her, upon the due administration of the estate of decedent, a share of the estate equal to that to which she would have succeeded had she been the natural child of decedent and he had died intestate, and restraining any other disposition of such share.'

The defendant cites two cases involving similar contracts of the New York Foundling Hospital. Fenlon v. Fenlon, 95 Neb. 322, 145 N.W. 634, 637, involved the construction of such a contract with John and Mary Fenlon with respect to the adoption of a three year old girl. John Fenlon died about seven months after the contract was executed. The child had not been adopted. The question was whether or not she inherited or was entitled to the equivalent of inheritance under the provisions of Section VIII of the contract. It was held that under the contract Mr. and Mrs. Fenlon had the right to elect when the child became

of age whether they would return her and provide for her according to the contract or would keep her and thus make her their heir and "This being the case, this child would not become their heir until the parties upon her becoming of age elected to make her such." The defendant can draw no comfort from that decision.

The second case cited by the defendant is Klein v. Klein, 69 N.D. 353, 286 N.W. 898, decided by this court. That case involved a contract between the New York Foundling Hospital and Katherine Klein, a widow, with respect to the adoption of a nine year old boy who turned out to be incorrigible and was committed to the State Training School. We there construed an exchange of letters to constitute an agreement on the part of the Foundling Hospital to take the boy back and terminate the contract. That case does not support either of the defendant's contentions.

The defendant further contends that plaintiff by her conduct has elected to take under the will and has waived her right to claim under the contract or is estopped from claiming thereunder.

"Waiver is the voluntary and intentional relinquishment or abandonment of a known existing right, advantage, benefit, claim or privilege which except for such waiver the party would have enjoyed." Gipson v. First National Bank of Bismarck, N. D., 97 N.W.2d 671, 672.

In the same case we also set forth this frequently quoted statement with respect to estoppel:

"An essential element of equitable estoppel is a representation which may consist of words, acts or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act or refrain from acting, to his prejudice."

The will of George Berzel was filed in the County Court of Stark County on July

30, 1956 and the defendant was appointed executrix pursuant to the terms of the will. The plaintiff signed a waiver and consent whereby she entered her appearance in the case and waived service of all notices and citations and submitted to the jurisdiction of the court. This waiver remained in effect until the plaintiff had consulted counsel regarding her rights under the contract in March, 1958. After being advised of her rights she promptly commenced this action. She also revoked the waiver she had filed in county court and appealed to the district court from an order allowing the final report and account of the executrix and from the final decree of distribution.

■ We attach but little importance to the fact that plaintiff filed with the county court a waiver of service of notices and citations and submitted to the jurisdiction of the court. The waiver was withdrawn before this action was commenced and before the plaintiff appealed to the district court from the order allowing the final report and account and the decree of distribution. These procedural waivers with respect to the probate of the will did not constitute a waiver of her right to assert and claim a share of the estate under the adoption contract. Neither did they amount to an election which would prevent her from claiming under the contract.

The plaintiff did not see the contract under which this action is brought until after her father's death, although he had told her of it during his illness. She testified that she discovered the contract shortly after his death while examining some papers that were in his safe and that she showed it to her mother and to the attorney for the estate who advised her that "it did not mean anything in North Dakota." The attorney testified that he never saw the contract until this action was started and denies that he ever told her that the contract did not mean anything in North Dakota. We find it unnecessary to resolve this conflict of testimony since other evidence is determinative of the questions of election and estoppel.

The defendant argues that by accepting benefits under the will the plaintiff has made an election and is estopped from claiming under the adoption contract. The final report does not show any partial distribution or division of property but contains the following items under the heading "money expended" in 1957: "Mary Fish —advance of prop share $1,000" and other entries with identical descriptions for these dates and amounts: April 29, $1,000; September 25, $500; December 27, $300, making a total amount received by Mary Fish of $2,800.

No partial distribution of the estate was either ordered or approved by the county court. Payments were made in response to requests for money from the estate by the plaintiff in letters written to the attorney for the estate. The remittances were made by the executrix upon the advice or with the approval of the attorney. The executrix also drew money from the estate. For instance the final report and account contains the following entry:

"December 4 (1957) Mary Berzel— advance of prop share $5,000."

At the time the plaintiff received the payments shown in the final acount and report she had in her possession the adoption contract, but we believe, as did the trial court, that she was not aware that under its provisions she was entitled to one-half of the estate as against the provisions of the will which gave her one-third of the residue. She carried on considerable correspondence with the attorney for the estate. She complained about the slowness of the progress of the probate and expressed her suspicions as to whether all the property of George Berzel was listed in the inventory of the estate. She referred several times to her share as being one-third. In his replies the attorney also referred to her share of the estate as being one-third. For instance,

in a letter of September 29, 1956, to the plaintiff, the attorney said:

> "Your father certainly knew what he was signing when he signed the will that I prepared and he was very much concerned that you receive ⅓, so rest your mind on that! * * * When we get ready to distribute funds, you will get ⅓ of any cash and ⅓ of anything else as per the will."

The plaintiff testified concerning the payments:

> "I didn't ask for one-third, I would ask for $1,000.00 and then, and then some other time, but I never specified that I wanted one-third, I just assumed I had a third coming."

Another transaction involved "the Weicker Drug Store property" which was a part of the estate. The plaintiff asked the attorney for the estate to sell her one-third interest in this property. According to her testimony he said, "I will see the judge." He called the plaintiff later and said that the judge had agreed. One-third of this property was sold by the attorney and according to his testimony the plaintiff executed a warranty deed for her undivided one-third interest and received $8,670.10. There appears to be nothing concerning this transaction in the records of the county court.

Another transaction that does not appear in the records of the court involves real estate known as "The 22 Club Property." According to the testimony of the attorney for the estate this property appears to have been sold in 1950 by George Berzel to Joe Koffler and his wife on contract for $20,000. Koffler paid nothing on that contract and about $6,000 interest had accumulated in connection with the transaction. The attorney testified that he talked the Kofflers into deeding their interest back to Mary Fish and Mary Berzel, who were the persons named in the will, and they personally sold it back to the Kofflers for the original price of $20,000 on another contract thus discounting the interest. None of the instruments involved in this deal is in evidence. This transaction, irregular as it appears to be, was participated in by the plaintiff under the belief that she would be entitled to only a one-third interest in the property upon the distribution of the estate. She was not aware of her right of election. It does not support a waiver of her rights under the contract for adoption and an election to take under a will. Her right to elect continued at least until the decree of distribution became final.

The situation is this: The plaintiff had a right under the adoption contract to receive one-half of the estate. She also had a right under the will to receive one-third. She could elect to take under either. Aside from the conflicting testimony as to whether the attorney for the estate knew of the contract and told the plaintiff that the contract did not mean anything in this state, we are satisfied that she acquiesced in the probate of the will in the belief that it governed her right to a share of the estate. That is the effect of her testimony and there is nothing in the correspondence between her and the attorney for the estate to indicate otherwise. It does not indicate an intention on her part to relinquish a known right or a forbearance to enforce such a right. Clearly there was no waiver on her part.

As to defendant's contention that there was an estoppel by election there appears to be neither an election nor an estoppel by conduct.

> "The mere acceptance by a legatee or devisee of the provisions of the will in his behalf does not constitute an election which will prevent the legatee or devisee from asserting against the estate of the testator, his personal representative or distributees, a contract binding the testator to provide for the legatee or devisee, unless the provision in the will in his favor appears to have been included for the purpose

of satisfying such contract." 57 Am. Jur., Wills, Sec. 191.

In this case the will was made in total disregard of the contract. The will and the contract are conflicting. Neither the interested parties nor the attorney for the estate appeared to have been aware of the right of the plaintiff to elect and of course no demand was made upon her for an election. While there appears to have been a division of the proceeds of some of the property on the basis of the will, these transactions were conducted by and under the supervision of the attorney for the estate without any procedure in the county court. The final report and account does not show that any of the payments were received by the plaintiff as divisions of property of the estate but merely as advances on the proportionate shares of the plaintiff and the defendant. No orders were entered in the county court with respect to the division of the estate or any part thereof until the order allowing the final report and the final decree which are now under challenge on appeal. No statute applicable to elections in such cases as this exists in this state. Any rules with respect to the time of election arise out of equity and not statutory law.

"A legatee is not obligated to make his election until he is in a position to do so understandingly, in the absence of a provision in the will for a statute fixing the time within which an election must be made." 97 C.J.S. Wills § 1249.

The rule set forth in the above quotation is subject to limitation by estoppel but in order to work such an estoppel it must appear that the action or lack of action of the one against whom the estoppel is claimed has resulted in an innocent party being misled to his prejudice. Gipson v. First National Bank of Bismarck, N. D., 97 N.W.2d 671, and cases cited therein; Archer v. Barnes, 149 Iowa 658, 128 N.W. 969; 19 Am.Jur., Estoppel, Section 85; 31 C.J.S. Estoppel § 108b.

We would further point out that the only legatee whose share of the estate will be diminished by the the assertion and allowance of plaintiff's lawful right under the contract of adoption is Mary Berzel. She is a party to the adoption contract and as much bound by it as was her husband George Berzel. We cannot assume that Mary Fish was in any better position to know of the provisions of the contract or the legal rights of the parties involved than was Mary Berzel who signed it and participated with her husband in taking Mary Fish into their home.

"To create an estoppel by acceptance of benefits it is essential that the person against whom the estoppel is claimed should have acted with knowledge of the facts and of his rights, and that the party claiming the estoppel should have been without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, and that he be misled to his prejudice." 31 C.J.S. Estoppel § 109b.

We reach these conclusions: The extent of plaintiff's right to participate in the distribution of the estate has not been finally adjudicated in county court. Her acceptance of proceeds of the estate as disclosed by the final report does not under the circumstances heretofore outlined amount to an election to take under the will; neither does her participation in the probate proceedings or extrajudicial sales of property constitute such an election or a waiver of her rights under the contract of adoption. The defendant neither personally nor as executrix has suffered prejudice or detriment by virtue of any acts, conduct or statements of the plaintiff which give rise to an estoppel.

The adoption contract provided that if the parties of the second part should die leaving a last will and testament it should contain a provision devising and bequeathing to the child at least as large a share of the estate of the testator as she would

have received if the testator had died intestate and the child had been the natural and legitimate child of the parties of the second part.

The judgment appealed from decreed:

"That the said contract be specifically performed and that the Defendants, Mary Berzel individually and as executrix of the estate of and Last Will and Testament of George Berzel, deceased, be and are hereby ordered and required to specifically perform the same by paying over and delivering to the said Plaintiff an undivided one-half (½) interest in and to all of the property of the deceased, George Berzel, at the time of his death, after the allowance of proper costs of administration and debts, and after making adjustments of amounts, if any, that have been advanced to the Plaintiff, and that said Defendant as executrix aforesaid, is hereby ordered and directed to proceed expeditiously and promptly with the closing of the administration of said estate, and with the payment and delivery to the Plaintiff of the amount and proceeds of the estate aforesaid; and that in default of such expeditious and prompt payment and delivery of such share of assets of said estate to the Plaintiff as aforesaid, this Judgment and Decree shall have the effect and operation at law and in equity of the conveyance of such property so as to vest the title of such interest in the said estate in the Plaintiff;".

We interpret the judgment to be effective with respect to all property that would have become a part of the estate of George Berzel, deceased, had he died intestate but not property that passed to Mary Berzel by right of survivorship. As so interpreted the judgment is affirmed.

SATHRE, C. J., and MORRIS, STRUTZ, BURKE and TEIGEN, JJ., concur.