Frank J. GEIGER, Margaret Hertz, La-Vane Geiger, Arthur Geiger, Mrs. Orville M. Metzger, Sister Barbara Mary (Rose) Geiger, Sister Mary Louise (Minnie) Geiger, Lillian Kneuper Palmersheim, Sister Toni (Elizabeth) Geiger and Martin J. Geiger, Plaintiffs and Appellants,

v.

The ESTATE of John CONNELLY and Theresa Schweitzer as personal representative of the Estate of John Connelly, Defendants and Appellees.

Civ. No. 9484.

Supreme Court of North Dakota.

Oct. 31, 1978.

Kelsch, Kelsch & Tudor, Bismarck, for plaintiffs and appellants; argued by Thomas F. Kelsch, Bismarck.

Morris A. Tschider, Bismarck, for defendants and appellees.

ERICKSTAD, Chief Justice.

On January 18, 1977, the Morton County Court entered an adjudication of an estate escheat in the matter of the estate of John Connelly. The plaintiffs herein, as the natural children of John and Annie Geiger, the alleged adoptive parents of John Connelly, appealed the adjudication of the county court to the district court. Concurrently, they filed an action with the district court praying for, among other things, specific performance of an adoption contract between their deceased lineal ancestors (John and Annie Geiger) and the New York Foundling Hospital of New York, which placed John Connelly in their home. The district court vacated the adjudication of escheat pending its determination of the specific performance action. The action for specific performance was tried to the district court upon affidavits and upon a written stipulation of facts. The district court entered judgment denying the plaintiffs' claim to succeed to John Connelly's estate under the laws of intestate succession. We shall hereinafter refer to the plaintiffs as the Geigers unless otherwise indicated. We affirm the judgment of the district court.

As John Connelly died intestate without lineal descendents, whether or not the natural children and grandchildren of John and Annie Geiger are entitled to inherit his estate depends upon the significance of Section VIII of the indenture entered into between John and Annie Geiger and the foundling home.[1]

The Geigers contend that the indenture effects a relationship equivalent to the relationship established by a statutory adoption. In support of this position, they refer us to the case of *Fish v. Berzel*, 101 N.W.2d 548 (N.D.1960).

---

1. The indenture signed by John and Annie Geiger could not be found, but its execution and its terms were stipulated to. The following is the language of Section VIII, stipulated to as being similar to the terms of Section VIII of the indenture in the instant case:

    "CLAUSE VIII
    "and the parties of the second part further agree, that if said child be not returned to the party of the first part when she attains the age of eighteen years, or shall not have been returned before she shall have attained such age and this agreement of indenture be duly cancelled and annulled by the consent of borth [sic] parties, or if said child be not legally adopted by said parties of the second part before said child attain such age, then the parties of the second part in consideration of this indenture and of being permitted by the party of the first part to keep such child shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that if the parties of second part shall die intestate said child shall inherit and succeed to such a share of the property real and personal of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part and that if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions giving bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator as he would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part"

Theresa Schweitzer, as personal representative of the estate, however, contends that this is not the situation and, in support of her position, she refers us to *Borner v. Larson,* 70 N.D. 313, 293 N.W. 836 (1940). Schweitzer contends that *Fish* merely stands for the proposition that the indenture permits the indentured child to enforce the terms of the indenture which provides that the child shall inherit from the persons who entered into the indenture, and that it extends no further.

The Geigers concede that *Fish* went no further, but they assert that the language of *Fish* permits and directs this court to apply the laws of intestate succession for the benefit of those whom Schweitzer contends are mere incidental beneficiaries and not donee beneficiaries.

The Geigers refer us to certain statutes which they believe are pertinent.

Section 30.1–04–09, N.D.C.C.:

"If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

1. An adopted person is the child of an adopting parent and not of the natural parents, . . ." § 30.1–04–09(1), N.D.C.C.

Section 30.1–01–06, N.D.C.C.:

"Subject to additional definitions contained in the subsequent chapters which are applicable to specific chapters, and unless the context otherwise requires, in this title:

4. 'Child' includes any individual entitled to take as a child under this title by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild, or any more remote descendant.

\* \* \* \* \* \*

29. 'Parent' includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this title, by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent." § 30.1–01–06(4), (29), N.D.C.C.

If the indenture has the legal effect of an adoption, then the Geigers would inherit from John Connelly on the basis of subsection three of Section 30.1–04–03, N.D.C.C., the pertinent part of which reads:

"The part of the intestate estate not passing to the surviving spouse under section 30.1–04–02, or the entire intestate estate if there is no surviving spouse, passes as follows:

3. If there is no surviving issue or parent, to the issue of the parents or either of them by representation."

Schweitzer contends that the only pertinent statute in this case is Section 30.1–04–05, N.D.C.C., which reads:

"If there is no taker under the provisions of this title, the intestate estate passes to the state for the support of the common schools and an action for the recovery of such property and to reduce it into the possession of the state or for its sale and conveyance may be brought by the attorney general or by the state's attorney in the district court of the county in which the property is situated."

There are essentially only two cases upon which the parties rely. Geigers rely upon *Fish* and Schweitzer relies upon *Borner.* Let us examine those cases.

In *Borner,* the issue was whether or not two children placed with the Gapperts under an alleged executed contract for adoption similar to the indenture in the instant case were entitled to petition for letters of administration under class (2) of Section 8657 of the Compiled Laws as children. The supreme court, in a three to two decision, held that they were not entitled to apply to become administrators of the estate, apparently because they were not children of the deceased. Notwithstanding, the court said it was not determining that the respondents had no interest in the estate under the alleged executed contract for adoption.

Apparently, what Schweitzer is contending is that *Borner* stands for the proposition that, although one may ultimately inherit from an intestate under an executed contract for adoption, such a right does not carry with it the right to petition for letters of administration. In applying that principle to the instant case, it means that although Connelly may have had a right to enforce the provisions of the indenture through a specific performance action, John and Annie Geiger were not entitled to inherit from Connelly under that contract, and, accordingly, neither were the Geiger children and grandchildren entitled to inherit from Connelly through their parents.

The Geigers concede that if *Borner* applies, they must lose in their specific performance action, but they contend earnestly that *Fish* applies rather than *Borner*. *Fish*, accordingly, becomes very important in the determination of this case.

In *Fish*, we have an indenture similar to the indenture in the instant case. In *Fish*, George and Mary Berzel entered into the indenture on March 24, 1917. On July 7, 1956, George Berzel died, leaving a will in which he bequeathed one-third of the residue of his estate to Mary Fish, the subject of the indenture, and two-thirds of the residue to his widow, Mary Berzel. When the county court ordered distribution pursuant to the will, Mary Fish appealed to the district court asserting that she was entitled not to the one-third bequeathed her, but to one-half of the estate under the law of intestate succession. Section 56–0104, N.D. R.C. (1943). The district court sustained Mary Fish in her view and appeal was taken to this court by Mary Berzel. This court construed Section VIII of the indenture to entitle Mary Fish to recover one-half of the residue and thus affirmed the judgment of the district court.

Our analysis of that decision is that it merely upheld the rights of the donee beneficiary, the child who was placed in the home by the New York Foundling Hospital,

and that it does not, either through its facts or through the reasoning applied by the court, extend benefits to the Geigers who have been categorized as incidental beneficiaries in this case.

The Geigers have argued on appeal that John Connelly must have intended that the Geigers inherit his estate inasmuch as he did not prepare a will distributing his estate to others. We think it is as reasonable to conclude, in light of the fact that he spent most of his life in North Dakota, and accordingly could be assumed to know, that he had the privilege of executing a will deciding whom should receive his estate, or allowing his property to go by the law of intestate succession and thus escheating to the state if he did not prepare a will. We think it also reasonable to assume that the last years of one's life are as important to a person making that decision as the first years of one's life, and in that connection it should be noted that John Connelly was apparently taken care of in his later years, had more contact with, and received more attention from Schweitzer than the Geigers.

It incidentally could be noted that when John and Annie Geiger and the rest of the Geiger family went to Montana to live for a time between John Connelly's 17th and 21st birthday, that John Connelly lived in Schweitzer's family home. Not only did Connelly elect not to go with the Geigers to Montana, but at about that same period of time he began to use the Connelly surname rather than the Geiger surname.

█ It is our view that *Fish* establishes the principle that the beneficiary of the indenture may inherit pursuant to the laws of intestate succession because of the terms of the indenture, but that it goes no further. This we believe is consistent with the general rule that a contract or agreement to adopt does not, in and of itself, create a status of parent and child between the child and the promisor, or make the child the heir of the promisor.[2]

---

2. "Such a contract or agreement does not, in and of itself, create a status of parent and child between the child and the promisor or

make the child the heir of the promisor; that can be done only by compliance with the statutory method prescribed, which usually

For the reasons stated in this opinion, the judgment of the district court is affirmed.

SAND, PAULSON, PEDERSON and VandeWALLE, JJ., concur.

requires a decree of a designated court in a proceeding had for that purpose, although under some statutes a legal adoption may be effected by a written and duly recorded declaration or deed." 2 Am.Jur.2d Adoption § 15 at 872.

*See also: Winder v. Winder,* 218 Ga. 409 at 411, 128 S.E.2d 56 at 58 (1962); *In re Clark's Estate,* 105 Mont. 401 at 426, 74 P.2d 401 at 412–13, 114 A.L.R. 496 (1937).